4d 66
66 585

———•+———

CHARLES BELDEN and HANNAH his wife, MILES BRADLEY and JANE his wife, STEPHEN PONGBORN and THANKFUL his wife, STEPHEN HAWLEY and LUCY his wife, ASA DEAN and JANE his wife, ELISHA HURLBUT, BARTHOLOMEW HURLBUT, ELIZABETH HURLBUT, DAVID HURLBUT, JEREMIAH HURLBUT, TIMOTHY BLISS, jun. and SAMUEL BLISS *against* ADONIRAM CARTER.

*A. having signed, sealed and acknowledged a deed, conveying a tract of land to B.; took up the deed, in the absence of B. and said to C. " Take this deed, and keep it : if I never call for it, deliver it*

MOTION for a new trial.

This was an action of ejectment for five sixth parts of eight several tracts of land, lately the property of *Jeremiah Hogaboom*, deceased.

The defendant pleaded the general issue.

On the trial, the plaintiffs claimed title as heirs at law of *Hogaboom*; the defendant, in right of his wife, who was *Pamela Griffin*, as devisee and grantee. It appeared,

*to B. after my death : if I call for it, deliver it up to me "  C. took the deed; A. died soon afterwards, having never called for it; and then C. delivered it over to B. Held that this was the deed of A. presently; that C held it as trustee for B ; that the title became consummate in B. by the death of A.; and that the deed took effect, by relation, from the time of the first delivery.*

*Quære, whether a will, attested by three witnesses, devising real estate, can be revoked by a subsequent will attested by two witnesses only ?*

that by a will duly executed and attested, dated the 5th of *January*, 1802, which was afterwards proved and approved, *Hogaboom* devised these tracts of land to *Pamela*. On the 3d of *December*, 1802, he procured another will to be drawn, in which he bequeathed all his personal estate to her, but made no disposition of any of his real estate. This will contained a clause revoking all former wills, but was attested by two witnesses only. At the same time, he procured a deed to be drawn of the demanded premises to *Pamela*, and one of another form to *Calvin Noble*. After the will and deeds were executed, the scrivener took up the deeds, and addressing himself to *Hogaboom*, said, " These you deliver for the purposes therein mentioned." To this *Hogaboom* made no reply; but, after pausing awhile, turned, and addressing himself to *Elizur Wright*, Esq. (who had witnessed the deeds and will, and taken the acknowledgment of the former,) said, " Take these deeds, and keep them: if I never call for them, deliver over one to *Pamela*, and the other to *Noble*, after my death: if I call for them, deliver them up to me." *Wright* thereupon received the deeds. *Hogaboom* never called for them; he died on the 3d of *June*, 1803; and after his death, they were delivered over according to his directions. *Pamela* was not present at the drawing, execution or delivery of the deeds, and never conversed with *Wright* on the subject. Upon these facts, two questions of law arose: first, whether the will of *January*, 1802, was revoked by the will of *December*, 1802; and, secondly, whether the delivery of the deeds to *Wright*, and the delivery of them over by him to *Pamela*, as above stated, constituted a sufficient delivery to pass the title of the demanded premises to her. The court decided the latter question in the affirmative; and, therefore, deemed it unnecessary to give any opinion on the former. The jury being directed accordingly, found a verdict for the defendant; and the plaintiffs moved for a new trial on the ground of a misdirection.

*R. M. Sherman* and *Bacon*, in support of the motion.

1. The first question is, whether the will of the 5th of *January*, 1802, was revoked by the will of the 3d of *December*, 1802, which contained a clause expressly revoking all former wills?

After the statutes of 32d and 34th of *Hen.* VIII. it was uniformly decided by the courts of common law in *England*, that a will in writing containing a disposition of land, might be revoked by any subsequent will or codicil expressly revoking a former. And even a parol declaration of the devisor, made *animo revocandi*, would destroy his written will or devise. *Pow. on Dev.* 532, 533. According to the settled principles of the common law, the will of the 3d of *December* was an express revocation of the will of the 5th of *January*. And as we have no statute in this state relative to the revocations of wills, we must be governed by the principles of the common law.

The statute 29 *Car.* II. requires a subsequent will or codicil to be signed by the devisor in the presence of three witnesses to effect a revocation of a former devise. It is contended that our courts ought to adopt the spirit of this statute. But has the court power to adopt the spirit of an *English* statute in derogation of the principles of the common law? In the present case there is an unanswerable objection to the court's adopting that section of the 29th of *Car.* II. which relates to the revocation of devises. That statute has been repeatedly before our legislature, and, at different times, they have selected from it those parts which they chose to incorporate into our system; they have adopted the section which relates to the making of devises; but have permitted their revocation to stand as at common law. The court are now called upon to *enact* a section of an *English* statute which our legislature have rejected.

It has been contended, that as the will of the 3d of *December* was attested by two witnesses only, it cannot

June, 1809.

BELDEN
v.
CARTER.

revoke the will of the 5th of *January*, which was attested by three witnesses. This objection is grounded on the trite maxim of the common law, *solvitur eo ligamine quo ligatur*. But this maxim, in its application, is confined to contracts *by deed*. The obligation which a deed imposes shall not be impaired but by deed; the obligation shall not be destroyed by evidence of a nature inferior to that by which it is created. But while the devisor lives, his devise creates no right, and imposes no duty. There is no obligation, no *ligamen*, upon the devisor, but his own will. And no maxim of the common law can restrain him from exercising it, and defeating the devise. The maxim *solvitur eo*, &c. can then with no propriety be applied to a devise and to a revoking instrument. But if it can, it remains to be shown that an instrument, attested by two witnesses, is inferior to an instrument attested by three witnesses; otherwise, the argument built upon the maxim fails even on the principle assumed. Attesting witnesses do not change the nature of an instrument, nor add to its weight or solemnity.

2. The second question is, whether the deed in question was ever duly *delivered?* After the grantor had signed and acknowledged the deed, he said to *Wright*, "take this deed, and keep it: if I never call for it, deliver it to the grantee after my death: if I call for it, deliver it up to me." *Wright* received the deed; the grantor never called for it; and after his death, *Wright* delivered it to *Pamela*, the grantee. She was not present, nor privy to the transaction, and did not know of the existence of the deed.

These are the facts on which the court are to say whether this deed was delivered. It is not claimed by the counsel for the defendant, that *Hogaboom*, the grantor, delivered the deed himself to the grantee; but it is claimed, that *Wright* delivered it, by virtue of a power or authority from *Hogaboom*. And it is admitted,

on our part, that a man may well deliver his deed by his agent or attorney. The law is correctly stated in *Shep. Touch.* 55. "A deed may be delivered by the party himself that doth make it, or by any other, by his appointment, or authority. And when it is delivered by another that hath a good authority, and doth pursue it, it is as good a deed as if it were delivered by the party himself; but if he do not pursue his authority, then it is otherwise."

If *Wright* had a *good authority*, and did pursue it, his delivery was good, and the deed is valid. But if he had not a good authority, or did not pursue it, his delivery is nothing, and the deed is void. *Wright* had no authority to deliver the deed during the life of the grantor. By the terms of his authority, he was expressly restrained from doing this; and if he had done it, his delivery would have been void, not being in pursuance of his authority? *Wright* had a naked authority from *Hogaboom* to deliver the deed after his death. Is this a good authority? The case turns on this question. *Hogaboom* attempted to create an authority to be exercised after his death; but no man can, by deed, much less by parol, create such authority. No man can create an authority which shall survive him. And though the authority is in terms unlimited, it is determined by the death of the principal. *Litt. sect.* 66. *Co. Litt.* 52. b. and *Tate* v. *Hilbert*, 4 *Bro. Chan. Cas.* 291. These authorities, and others that might be adduced, establish the position, and put an end to this case. *Wright's* authority was determined by the death of *Hogaboom;* and the delivery after was void. The delivery of a deed is as essential to its validity as signing; either may be performed by attorney; but it must be performed in the life of the grantor.

It is said, on the part of the defendant, that this deed was in the hands of *Wright* as an *escrow*, and might well be delivered to the grantee after the death of the grantor. We deny that it was an *escrow*. In every

case of an *escrow*, there is a contract and privity between the grantor and grantee; the person to whom the deed is delivered is, by mutual agreement, constituted the agent of both parties; he does not hold the deed subject to the control of the grantor; he has no power over, and can no more countermand the delivery of, an *escrow*, than of an absolute deed. It is always in the power of the grantee to entitle himself to the deed, and to the estate, by performing the stipulated condition. And when performed, the deed takes its whole effect by force of the first delivery, without any new delivery. *Perryman's* case, 5 *Co.* 84. b. But in the present case there was no contract or privity between the grantor and grantee. *Wright* was not the agent of both parties; the grantee did not know that the deed was in his hands, or even in existence. *Wright* held the deed subject to the control of the grantor, who retained absolute power over it, and could countermand the delivery; the grantee could by no act entitle herself to the deed. This instrument, therefore, has no one feature of an *escrow*.

But by considering this instrument as an *escrow*, the difficulty is not removed; for delivery is as essential to the validity of an *escrow* as an absolute deed. The only difference is, that in the one case, the grantor makes the delivery to the grantee, in the other, to a stranger. In either case, until the grantor makes the delivery, the deed is a dead letter. If he puts it into his scrutoire, or in any way retains the possession of it, or the dominion over it, it is neither a deed, nor an *escrow*. This deed in the hands of *Wright* was in the possession of *Hogaboom*, and as completely subject to his control as if it had been deposited in his scrutoire, instead of being deposited in the hands of *Wright*, his agent. There is no magic in the term *delivery*, when applied to a *deed;* it means the same as when applied to any other personal chattel. To constitute a delivery of a personal chattel there must be an *actual tradition*,

HARVARD LAW LIBRARY

June, 1809.

BELDEN
v
CARTER.

a delivery over of the thing, as was said by Lord *Hard-wicke* in *Ward* v. *Turner*, 2 *Ves.* 442. In *Hawkins* v. *Blewit*, 2 *Esp. Rep.* 663. the question was, whether a personal chattel was delivered. Lord *Kenyon* said, that to constitute a delivery, " the donor must not only part with the possession, but also with the dominion over the thing "

In the case before the court, there was no actual tradition; the grantor never yielded the dominion over the deed. He never even parted with the possession : for while it was in the hands of *Wright*, the agent, it was, in contemplation of law, in the possession of *Hogaboom*, the principal. And will it be said, that a grantor has delivered a deed, while it remains in his possession, under his dominion, and subject exclusively to his control ?

There is no doubt but that *Hogaboom* intended to vest *Wright* with authority to deliver this deed after his death ; and deposited the deed with *Wright* for the sole purpose of enabling him to execute this authority. This vain attempt to create an authority to deliver the deed, has been considered and treated as an actual delivery of it ; and has produced the confusion that attends this case But there is no analogy between *a good authority* to deliver a deed, and an actual delivery. The authority is countermandable, as this was ; the delivery is not. An authority may be revoked by him who gives it, and his death determines it ; but a deed delivered is out of the reach of the grantor.

It cannot be claimed that *Pamela*, the grantee, acquired any title to the land till the deed was delivered to her after the death of the grantor. Nor can it be claimed, that the grantor devested himself of the title by depositing the deed with his agent, subject exclusively to his own control, and in no event to be delivered till after his death *Hogaboom*, therefore, died seised in fee of the land in question; *et seisina facit stipitem.*

The land descended to his heirs; and no conveyance of the ancestor, which is not to take effect till after his death, can defeat his heir, except a devise attested by three witnesses.

This forms a distinct objection to the defendant's title under the deed. It was not to take effect till the death of the grantor; it is, therefore, a testamentary instrument, and, not being attested by three witnesses, is void by statute. Whether an instrument is a deed or devise, does not depend on its form or manner of execution, but upon its operation. If it is not to operate till after the death of him who makes it, it is a devise, whatever be its form. "A deed, if made with a view to the disposition of a man's estate after his death, will enure in law as a devise or will." *Pow. on Dev.* 13.

This subject was elaborately discussed, and the law deliberately settled as here stated, in the case of *Habergham* v. *Vincent*, 2 *Ves.* jun. 204. All the authorities that bear on this question are there collected; on which that profound lawyer, Justice *Buller*, says, "These cases have established, that an instrument in any form, whether a deed-poll or indenture, if the obvious purpose is not to take place till after the death of the person making it, shall operate as a will. The cases for that are both at law and in equity; and in one of them, there were express words of immediate grant, and a consideration to support it as a grant: but as upon the whole, the intention was, that it should have a future operation after death, it was considered as a will." P. 231.

In the case of *Habergham* v. *Vincent*, the instrument was, in form, a deed, attested by two witnesses; but as it was not intended to operate till after the death of the grantor, it was held to be a will, and void for want of three witnesses. That case settles every question that can arise in the present.

It will be contended by the defendant's counsel, that an instrument, which is, in form, a deed, cannot be con-

June, 1809.   sidered a devise, unless it appears from the face of the
              instrument, that it is not to operate till after the death
BE, DEN       of the grantor.
v.
CARTER.            This distinction is not warranted, by the cases of *Green*
              v. *Prand*, 1 *Mod*. 117. and *Habergham* v. *Vincent*.

                   In the case before the court, the defendant derives
              his title from this instrument. He must prove the exe-
              cution of it, by the attesting witnesses. One essential
              fact to be proved by them is the delivery of the deed.
              They testify, that the deed was not to be delivered; of
              course, not to operate, till after the death of the grantor.
              If this evidence is received, it proves this to be a testa-
              mentary instrument, and it is void for want of three wit-
              nesses: if the evidence is not received, the execution
              of the instrument is not proved. On either ground, the
              defendant's title fails.

                   *Daggett* and *Gould*, contra.
                   The defendant claims title, first, by the devise; se-
              condly, by the deed.

                   1. The title of the defendant is good by the will of
              the 5th of *January*, 1802. This would be indisputable,
              were it not for the will of the 3d of *December*, 1802,
              revoking all former wills; but this last will is not wit-
              nessed according to the statute for a devising will.
              Hence arises the question whether, by our law, a will
              witnessed by three witnesses, devising real estate, can
              be revoked by any instrument of less solemnity.

                   In the first place, if this revocation be good, then a
              *parol* revocation would also be good; because there be-
              ing no statute requisition of witnesses short of three,
              an instrument witnessed by two is of no more force
              than if witnessed by only one, or if not witnessed at all;
              and a will not witnessed at all, is, upon common law
              principles, of no more force or solemnity than a parol
              will. Indeed, such a will is a testamentary bequest by
              parol only. But that an instrument of any nature, to
              the validity of which three witnesses are necessary,

should be destroyed by parol merely, is opposed to an
invariable rule of the common law, that *quisque obli-*
*gatio dissolvitur eo ligamine quo ligatur.* This is also
opposed to right reason, the dictates of which are, that
no rights should be impugned, vacated, or disturbed,
unless by proof equal to that by which they are esta-
blished.

When it is said, that a deed attested by two witnesses
may be discharged by a writing not attested by two wit-
nesses, we answer it is not *ad idem.* To make it so, a
case must be shown, where the witnesses to the deed
were essential to its existence as such.

In the next place, it may be observed, that there is
no statute in *Connecticut* requiring that a republication
of a will shall be attested by any witnesses; yet the
courts have uniformly decided, that a parol republica-
tion is not good. So was the decision in the case of
*Meigs*, on an appeal from probate, at *Litchfield*, in *Au-*
*gust*, 1802. So also was the decision by three judges,
at *New Haven*, in *August*, 1808, in the case of *Pruden*
v. *Pruden.* The courts have been compelled to resort
to these principles to preserve the system of devising
from gross absurdity.

Suppose a testator makes a devise attested by three
witnesses : he then makes a revoking will attested by
two : he then makes a republication attested by two.
Upon the principle contended for by the plaintiffs' coun-
sel, the revoking will would control throughout; it
would revoke the devise, and the republication would
not set it up again.

In the third place we contend, that our courts ought to
adopt, as rules of law on the subject of revoking, the
principles which introduced the *English* statute of 29
*Car.* II. c. 3. s. 6. requiring three witnesses to a revo-
king will. The devising clause put an end to all parol
republications, not by its letter, but by its *spirit;* since
the admitting of them would be attended with all the

inconvenience, mischief and fraud, that the statute was intended to obviate. *Pow. on Dev.* 665. To adopt these principles will not oppugn any common law maxim. So far from producing any discordancy in the system, it will tend to make it more perfect. Our courts are warranted in doing this, by numerous precedents. Thus it has been decided, that duplicity in pleading shall not be taken advantage of on general demurrer; that promissory notes are specialties; that there shall be no entailments beyond the issue of the first donee; that one may claim as heir to a person never seised; and many other innovations, which the state of society in this country renders necessary to attain the ends of public justice.

2. The defendant's title is good by the *deed.* This deed was duly signed, witnessed, and acknowledged, and is now in the hands of the grantee according to the directions of the grantor. It would seem strange, at first blush, that such a deed should not be valid. The requisitions of the statute(a) have been complied with.

But, it is said, the deed was not *delivered;* and this is the only point arising on this part of the case. If the decision in *M'Donald* v. *Leach, Kirby,* 72. which has never been overruled, may be relied on, the point is easily settled; for by that decision, any deed in this state, acknowledged before a justice, and given over to be delivered, is immediately valid as a deed.

But we contend, that this deed is valid upon principles of the *English* common law.

In the first place, the instrument in question was delivered to *Wright,* as *a deed.* The words used by the grantor were, "Take these *deeds,*" at the same time delivering them over. Apply the law, as laid down by *Perkins, sect.* 143. *Shep. Touch.* 59. and recognised by the *Supreme Court* of *Massachusetts* in *Wheelwright* v. *Wheelwright,* 2 *Mass. Rep.* 452. to this case, and it

(a) *Stat. Conn.* tit. 162. c. 1. s. 5, 6.

will be seen, that the instrument in question was the

grantor's *deed presently*, and that *Wright* was a *trustee* of it for the grantee.

But if it was not delivered as a deed, it certainly was as an *escrow*. " The delivery of a deed as an *escrow* is said to be where one doth make and seal a deed, and deliver it unto a stranger until certain conditions be performed, and then to be delivered to him to whom the deed is made, to take effect as his deed." *Shep. Touch.* 58. In *Perkins, sect.* 9. a case of an *escrow* is stated, which corresponds with this definition. That the deed *does take effect*, and become *absolute*, upon the performance of the condition, or the happening of the event, is incontrovertible. That in the case at bar, the event has happened, appears from the record. Why, then, is not the defendant's title complete? The objection is, that this instrument was *countermandable ;* and, being so, whatever it might be called, it was no deed.

To this we answer, first, that if this was delivered as a *deed*, it was *not* countermandable. The section before referred to in *Perkins*, is express upon this point. But, secondly, if it was countermandable, still it was an inchoate deed. An arbitration deed is countermandable from its nature; it is inchoate until the publishing of the award; and then it becomes absolute. *Peck* v. *Goodwin, Kirby,* 64. The objection is equally forcible against every instrument that is confessedly an *escrow;* for the very idea of an *escrow* implies, in its nature, that it is *not yet* a deed. It is countermandable by *implication.* Further, the deed in question, if countermandable during the life of the grantor, yet not being in fact countermanded, became absolute on his death.

If I make a deed, and deliver the same unto a stranger as an *escrow*, to keep ten days, and then to deliver the same to the grantee named therein, upon condition that he shall pay me ten pounds before that time ; if the ten pounds be paid, and the *escrow* delivered, it is my

deed, and shall bind me. *Perk. sect.* 138. Now, would it make any difference, if this condition were superadded, *viz. if I do not previously call for the writing,* the fact being that I do not call for it; would not the writing in that case be a good deed after delivery?

The counsel for the plaintiffs, assuming that this writing did not take effect as a deed, during the life-time of *Hogaboom,* for want of delivery, contend, that there could be no delivery afterwards, on the ground that no man can create an authority to be exercised after his death. If this ground were tenable, it would have defeated the deed in the case of *Wheelright* v. *Wheelright,* cited from the *Massachusetts Reports.* There the deed remained in the hands of a third person until the death of the grantor, and upon that event, was delivered over to the grantees. This objection is also inconsistent with the position of law laid down in 5 *Co.* 85. The case there put is one in which there could *in fact* be no second delivery; yet it is said, there being *traditio inchoata* in the life-time of the parties, and *postea consummata existens* by the performance of the condition, the deed takes effect by force of the first delivery, without any new delivery. In the case of a will, it is admitted, that a man may give an authority to be exercised after his death; and this is not because the case of a will forms any exception to the general rule. There is, indeed, no instance in which the death of the person giving the authority revokes it, except where the ultimate act is to be done in *his name.*

As to this being a testamentary disposition, it is sufficient to observe, that an instrument purporting to be of one nature shall never be taken to be of another, unless it cannot operate according to its purport; the only object being *ut res magis valeat quam pereat.* To say that this instrument cannot operate as a *deed,* is to beg the question.

BY THE COURT. It is unnecessary to decide the question respecting the revocation of the will, as the court are of opinion that the defendant has a good title under the deed.

The granter delivered the deed to *Wright*, with a reservation of a power to countermand it ; but this makes no difference ; for it was in the nature of a testaméntary disposition of real estate, and was revocable by the grantor during his life, without an express reservation of that power.

The case, then, stands upon the same footing as if there had been no reservation of a power to countermand the deed.// It was a delivery of a writing as a deed to the use of the grantee, to take effect at the death of the grantor, deposited in the hands of a third person to hold till that event happened, and then to deliver it to the grantee. The legal operation of this delivery is, that it became the deed of the grantor presently ; that *Wright* held it as a trustee for the use of the grantee ; that the title became consummate in the grantee by the death of the grantor ; and that the deed took effect, by relation, from the time of the first delivery.//

New trial not to be granted.