STEWART *against* STEWART.

*Middlesex,*
*July,*
*1824.*

Stewart
*v.*
Stewart.

5  317
172  155

Where a man executed a deed, conveying all his real estate to his children, and put it into the hands of one of them, to be delivered to them, on his death; and on the happening of that event, about two years afterwards, the deed was delivered pursuant to the trust; it was held, 1. that this instrument was strictly a deed, taking effect from the delivery of it to the depositary, and not a testamentary disposition; and 2. that it was not void, as being fraudulent in relation to the widow's right of dower.

This was an appeal from a decree of the court of probate for the district of *Middletown,* assigning dower to *Mary Stewart,* widow of *James Stewart* deceased, in the real estate of her late husband.

The cause was tried at *Haddam, August* term, 1823, before *Chapman,* J.

On the 2nd of *February,* 1819, *James Stewart,* being seised of the lands in question, which were all the real estate, that he then or afterwards owned, executed his quit-claim deed thereof, vouched by two witnesses, and duly acknowledged, to his six children, *viz. John,* the appellant, *Sanford, Charlotte, Eliza, George* and *James,* purporting to convey the premises to them in fee-simple. This deed he immediately delivered to *John,* instructing him to hold it until the death of the grantor, and then to deliver it to the grantees, for their use and benefit. The deed was expressed to be " for divers good causes and considerations, and especially for the consideration of 3000 dollars," received of the grantees; but, in fact, no money, or other valuable consideration, was ever paid, or agreed to be paid, for the conveyance. *James Stewart,* the grantor, died, on the 13th of *April,* 1822; and *John,* pursuant to the trust reposed in him, immediately delivered the deed to the grantees, who, on the 25th of *June,* 1822, procured it to be recorded.

Upon these facts, the appellant claimed, that *James Stewart* did not die seised in fee of the premises; and that his widow was not by law entitled to dower therein. The judge reserved the case for the consideration and advice of this Court.

*Sherman,* for the appellant, contended, That the title of the grantees, under the deed, was *anterior* to that of the appellee; and that it was *not fraudulent.* In support of these general propositions, he insisted,

1. That the instrument executed by *James Stewart,* was not a devise. It had not the *form* of a devise; nor the *legal for-*

*malities* of a devise; nor is there any fact in the case, evincing an *intention* to make a testamentary disposition of the property.

2. That it was not an escrow, but a deed, taking effect immediately, though the title was not consummate until the death of the grantor. All titles accruing subsequent to the delivery of the deed to the appellant, must, of course, be subject to such deed. *Belden* & al. v. *Carter*, 4 *Day* 66. *Wheelwright* & al. v. *Wheelwright*, 2 *Mass. Rep.* 447. 453.

3. That the execution of the deed was not a fraud upon the appellee; nor was the transaction, in any point of view, illegal. It is to be kept in mind, that no fraud is found otherwise than as it is inferrible from the act of giving the deed. A voluntary conveyance is constructively fraudulent as against creditors, because its tendency is to defeat their rights. But what right has the wife to her husband's estate, while he is living? If she had any such right, the husband could not defeat it, by a conveyance for a valuable consideration, or for the payment of a *bona fide* debt. In every possible case, it would be necessary for her to join in the conveyance, or it would be subject to her right. In *England*, and in those states which have copied the *English* law on this subject, the wife's right to dower originates with the *marriage*; here it commences with the husband's *death*. If, then, the wife has no right, no act of the husband can be a fraud upon such right. Her expectations may be disappointed; but she cannot be defrauded.

It may be said, that the right of dower is superior to the claims of creditors. But the widow is preferred merely because she is *prior in tempore*, not because she is *potior in jure.* Here the prior title is in the grantees.

*Daggett* and *Stanley*, for the appellee, contended, 1. That the conveyance in question was in the nature of a testamentary disposition of the property; and that it could not, therefore, deprive the widow of her dower. *Pow. Dev.* 13. The deed was subject to the controul of the grantor, during his life, as much as though it had been a will; the grantees could derive no benefit from it, until after his death, any more than if they had been devisees under a will; and it was subject to the claims of creditors, as much as a devise would have been. If the estate remains subject to the disposition of the husband until his death, he dies *possessed* of it, to every substantial purpose, and the widow is entitled to dower. In *Belden* & al. v. *Carter*, 4

*Middlesex,*
July,
1824.

Stewart
*v.*
Stewart.

*Day* 66. 79. a deed of land, which was not to be delivered to the grantee, until after the death of the grantor, was held to be in the nature of a testamentary disposition, and revocable, by the grantor, during his life. In *Habergham* v. *Vincent*, 2 *Ves. jun.* 204. 231. it was said, by *Buller*, J., to be established by cases both at law and in equity, "that an instrument in any form, whether a deed poll or indenture, if the obvious purpose is not to take place till after the death of the person making it, shall operate as a will."

2. That this instrument was an escrow, and not to be delivered until the grantor's death; and then it could not be delivered *as a deed. Co. Litt.* 36. *a. Shep. Touch.* 59. The law is this. If *A.* make a writing, and deliver it to a third person *as his deed*, to be delivered over, it is the deed of *A. presently.* But if it be delivered to a third person, to be delivered over, on the happening of some event, as the deed of the grantor, it becomes effective from the second delivery only. *Wheelwright* & al. v. *Wheelwright*, 2 *Mass. Rep.* 447. 3 *Co. Litt. lib.* 1. *note* 223. (*Day's* ed.) It never takes effect *by relation*, except in case of necessity, *ut res valeat.*

3. That this instrument, if a deed, was made with the evil intention of defeating the dower; and was, therefore, void. Conveyances made before marriage, either by the intended wife, to defeat the right which the husband would acquire to her property by the marriage, or by the intended husband, to disappoint his wife of her dower, have been set aside, as *fraudulent*, and made with an *ill conscience*. 4 *Cruise's Dig.* 408 to 414. A conveyance made *after* marriage, for a similar purpose, and producing a similar effect, can surely stand on no better ground. And in the cases referred to, there was no existing right, at the time of the conveyance, to be defeated.

4. That aside from any evil intention, the law will not permit a man to do that indirectly, which it would not sanction, if done directly. Now, it is undeniable, that if *Stewart* had attempted to deprive his wife of dower by will, the law would have rendered such attempt fruitless.

5. That the deed was not effectual against the right of the appellee, until recorded; and it was not recorded until after her right had become vested.

HOSMER, Ch. J. By the law of this state, every married woman living with her husband at his death, has right of dower in one third of the real estate, of which her husband died posses-

sed, in his own right. *Stat. p.* 180. The word *possessed*, undoubtedly, is here used as synonymous with *seised ;* and in this light I shall consider it. The general question to be determined, is, whether *James Stewart* died seised of the estate in which dower is demanded.

A voluntary deed of all his real estate, was given by *Stewart,* to his children, nearly two years before he died, and put in the possession of a third person, to be delivered to them, upon his death. On the happening of this event, the deed was delivered pursuant to the trust.

Two objections are made to the validity of the deed, so far as the rights of Mrs. *Stewart* are concerned. It is said, that this instrument was virtually *a devise ;* and that if it was not, it was *fraudulent*, as it related to her.

1. As to the nature and effect of the deed. It must be admitted, as no particular form of a devise, is, by law, prescribed, that any writing, by which the party intends to dispose of real estate, by way of last will, after his death, if it be not contrary to the established rules of law, and having the requisite legal formalities, will amount to a devise. *Pow.* on *Devises,* 13. & seq. *Habergham* v. *Vincent*, 2 *Vesey* jun. 204. 230. That this principle has no applicability to the case before the court, is unquestionable. It never was the intention of *Stewart* to devise his estate ; but to convey it, by deed. The instrument of conveyance has two witnesses only ; and is, in consequence, deficient in the legal formalities indispensible to a devise. Besides, it is, strictly speaking, a deed, taking legal effect from its execution. I do not mean, that it was consummate ; nor is it necessary it should be ; but that it was efficacious to the passing of the interest conveyed, from the delivery of the deed to the trustee or agent. The case of *Belden* & al. v. *Carter,* 4 *Day* 66. is, on this point, perfectly conclusive. The deed, in that case, was delivered to a third person, to keep, and if not called for, to deliver, after the death of the grantor. It was determined by the court, that by legal operation, it became the deed of the grantor presently ; and that the depositary held it as trustee for the use of the grantee ; that the title became consummate in the grantee, by the death of the grantor ; and that the deed took effect, by relation, from the time of the first delivery.

A criticism has been made on an expression of the court, rather inaccurately made, but which, perhaps, when taken in reference to the subject matter, is not untrue. It was said, that the deed was in the nature of a testimentary disposition of the es-

Middlesex,
July,
1824.

Stewart
v.
Stewart.

tate, and revocable, by the grantor, during his life, without an express reservation of that power. The court, by this phrase, did not intend to aissimilate the deed to a devise, except in this particular, that it was revocable as a devise is. More correctly to communicate the obvious meaning of the court, it ought to have been said, not that it was of the nature of a testamentary disposition, but that it had, from the power of revocation, one of the inseparable properties of a devise. If it had been of the nature of a devise, which operates always *in future*, it could never have been a deed, and so declared to be, operating in *præsenti*.

The case of *Wheelright* & al. v. *Wheelright*, 2 *Mass. Rep.* 447. comprises the same doctrine that was declared in *Belden* v. *Carter*, conformably with the *English* decisions on this subject. *Bushell* v. *Passmore*, 6 *Mod.* 217. 218. *Perk.* 143. 144.

The instrument in question, then, was not a devise, but a deed, taking effect from the first and only delivery, and consummated by the death of the grantor.

2. Was the deed fraudulent, as relative to Mrs. *Stewart?* This depends entirely on *the right*, which she had to the estate conveyed, *anterior* to the death of her husband. If she had *no right*, which the law recognizes, then the delivery of the deed could be no fraud on her right, that is, no fraud on a non-entity. By the *English* law, the right to dower originates on the marriage; but by our law, it takes its origin at the husband's death. Our ancestors did not think it expedient to restrain that free transfer of real estate, which the interest of the community requires; and for this reason, the law has given to the wife no lien upon, or right, legal or equitable, to the husband's estate, during his life. Her condition, in this respect, is like that of her husband's children, or other heirs; and the only right of either, is, to such estate as he has not disposed of. The condition of creditors and purchasers, is altogether different. The law, proceeding on the equitable ground, that the estate of debtors ought not, unless for valuable consideration and *bona fide*, to be placed out of the reach of their creditors, has rendered all deeds made in contravention of this principle, absolutely void. Undoubtedly, in the case of a devise, the wife will be entitled to her dower; but this is not on the ground of any right prior to her husband's death, but because the estate is considered as cast upon her, before the devise commences its operation. The cases collected by *Cruise*, in his *Digest, vol.* 4. *p.* 407. & seq. have no analogy to the subject under discussion. On examination, it will be found, that they all proceed on the

*Middlesex,*
*July,*
*1824.*

Stewart
*v.*
Stewart.

principle, that fraud had been practised on *an existing right.* Besides, the fraud recognized, and relieved against, was in equity, and not at law, and was not a fraud which the law notices. It cannot be necessary to show, that in equity, fraud is presumed, in many cases, on grounds upon which the law will not pronounce the transaction to be invalid; and that that may be a fraud in equity, which is not a fraud at law. *Trenchard* & al. v. *Wanley,* 2 *P. Wms.* 166. *Townsend* v. *Lowfield,* 3 *Atk.* 536, 537. *Chesterfield* & al. Exrs. v. *Jansen,* 1 *Atk.* 301.

In conclusion, I am of opinion, that the estate in question was legally conveyed, by the deed, to the children of the grantor; and that the deed was not fraudulent, as it respects Mrs. *Stewart.*

PETERS, BRAINARD, and BRISTOL, Js. were of the same opinion.

Decree of probate to be
disaffirmed.