Bronson, J.
A bill of exceptions is a statement of the questions made and exceptions taken to the ruling of the court or judge on the trial of the cause before a jury. There is no such practice out of the city of New-York as a bill of exceptions to the opinion or judgment of the court upon a case made. When the court had pronounced its judgment, the case should have been actually turned into a bill of exceptions, pursuant to the stipulation contained in it, by stating that the questions intended to be reviewed were made on the trial of the cause before the jury, decided by the judge, and exceptions taken to his opinion. No notice whatever should have been taken of the case made *580 for the opinion of the court of C. P., nor of the agreement under which the verdict was rendered. After having the bill signed and sealed, the defendant would then have been in a condition to bring a writ of error. But there is nothing here which can be recognized as a bill of exceptions, and we can only look into the matter by consent. In yielding to the request of the counsel for both parties that the difficulty should be overlooked, we do not intend that the case shall hereafter be drawn into precedent.
On the merits, the case is shortly this: Mrs. Clifton of Baltimore being indebted to the plaintiffs in New-York, and finding lerself in failing circumstances, sent a case or package of goods to the defendant, a part of which was put up in paper boxes and directed to the plaintiffs. She intended that the plaintiffs should receive those goods in part payment of her debt, of which she advised them by letter at the same time that the goods were forwarded. The goods must have been received by the defendant, and'the letter by the plaintiffs, about the first day of April, 1841. On the sixteenth of that month the defendant sold all the goods which came from Mrs. Clifton, including those which were intended for the plaintiff as well as those intended for his own house, and converted the same into money. The plaintiffs never advised Mrs. Clifton that her proposition was accepted, nor did they act upon the matter in any form until the fifteenth of May, when they demanded the goods of the defendant. Upon this state of facts the defendant was clearly chargeable with a wrongful conversion of that portion of the property which was intended for the plaintiffs, and the owner might either have brought trover, or he might have waived the tort, and brought assumpsit for the money which the defendant had received on the sale of the goods.
There is no difficulty about the form of the action; but the question is, who was entitled to bring it? That depends on the inquiry, who was the owner of the goods at the time of the conversion? Mrs. Clifton had, in effect, made a proposition to sell the goods to the plaintiffs in part payment of her debt; but the offer had not been accepted at the time of the conversion. *581 The plaintiffs were at full liberty to reject the goods, and sue for the whole debt. The transaction amounted to nothing more than an offer by one party to sell goods, which was not accepted by the other. There was no contract of sale. The title to the property still remained in Mrs. Clifton, and the action should have been brought in her name.
The case of Atkin v. Barwick, (1 Stra. 165,) reported also in 10 Mod. 431, and Fortesc. 353; has often been questioned, and it has been generally agreed that the case cannot be supported on the reasoning of the judges who decided it. If the vendees received the goods which had been sent pursuant to their order, the contract of sale was complete, and nothing short of a re-sale could revest the title to the property in the defendants, who were the vendors. And although the vendees delivered the goods to Penhallow for the use of the defendants, yet, as the bailee was a stranger to the defendants, the title could not revest in them until they assented to the transfer; and in the mean time the vendees had become bankrupts, and the property had passed to the assignee in bankruptcy. Lord Mansfield said of that case, that “ the judgment seemed to be right, but the reasons wrong. The true ground was, that the trader very honestly refused to accept the goods, and returned them.” (Harman v. Fishar, Cowp. 125.) Lord Kenyon acquiesced in this view of the case in Neate v. Ball, (2 East, 124.) But in an earlier case he had spoken of the original contract of sale as complete, and said that “ the agreement of the parties to rescind that contract put an end to the sale, as if it had never taken place.” (Salte v. Field, 5 T. R. 214.) There is great difficulty in saying that the vendees refused to accept the goods, for they actually received and kept them more than a-month before they were delivered to Penhallow, and. nineteen-days more elapsed before they advised the vendors of what had been done. Further as to Atkin v. Barwick, see Alderson v. Temple, (4 Burr. 2339,) where Lord Mansfield says,“ the honesty of the case inclined the court to the judgment which they gave : the reason given tons upon a subtilty.” See also Richardson v. Goss, (3 B. & P. 119,) Ash v. Putnam, (1 Hill, *582 309,) and Lawes On Chart. Part. 544—550. Although Atkin v. Barwick seems never to have been overruled, it would be difficult, I think, to support it upon any principle without altering some of the facts.
But if that case can be supported either on the ground that the vendees refused to receive the goods, or because the sale was afterwards rescinded, it is nevertheless plainly distinguishable from the one at bar. There, the same goods which had been ordered were delivered to Penhallow to be returned to the vendors ; but there is no such fact in this case. It does not appear where Mrs. Clifton obtained these goods. They belonged to her, and the plaintiffs cannot succeed without showing that they had purchased from her prior to the conversion by the defendant. That they have not made out. They show nothing more than a proposition on her part to sell, which had not been assented to by them. As there was no contract of sale, the title remained in Mrs. Clifton. She might • have recalled the goods, and in judgment of law the conversion by the defendant was an injury done to her. The plaintiffs did not assent to the proposition to take the goods in part payment of their debt, until a month after the conversion by the defendant; and it is carrying the doctrine of relation a little too far to say that it will transfer the right of action which had already vested in Mrs. Clifton. I think the judgment of the court below erroneous.
Cowen, J.
Mrs. Clifton being indebted to the plaintiffs below, shipped goods to the defendant with instructions to deliver them to the plaintiffs in part discharge of the debt. Instead of doing so. he converted the goods by selling them as his own and receiving the price. After this, the plaintiffs, who were apprized of the fact by Mrs. Clifton’s letter, demanded the goods of the defendant, which he refused to deliver, and denied having received any direction to deliver them. The claim of the plaintiffs below was resisted on the ground that the only person entitled to a remedy against the defendant was Mrs. Clifton, the plaintiffs not having become parties to the transaction till after the sale. The objection was overruled, the plain *583 tiffs had a verdict and judgment, of which the defendant seeks a reversal for error.
The defendant received the goods with the instructions of Mrs. Clifton, and never having, in answer to her, declined the trust, he was clearly estopped to question it, as between himself and her. Beside, the presumption would be that he originally assented to the terms of the delivery; because, retaining the goods as he did, such assent was honest, and withholding it would have been a fraud. Indeed, it is not denied that as to Mrs. Clifton, the defendant was incapable of repudiating the trust; but it is insisted that no right whatever accrued to the plaintiffs. It would be doing no violence to the truth, and indeed following out a well settled rule of law, to say that the plaintiffs, who were apprized by Mrs. Clifton’s letter of the facts, immediately assented. The assignment to them was beneficial. Mrs. Clifton was insolvent and sent the goods to be applied in part payment. On this presumption the plaintiffs were in all probability privy to the transaction before the goods had been sold by the defendant. The latter could scarcely have supposed that the plaintiffs would not be duly informed, and would not at once accede to an arrangement which in no view could be otherwise than beneficial. Under such circumstances, the court below could not, on the most familiar principles of presumptive evidence, do less than refuse the motion for a nonsuit, which is the only decision upon the merits to which any exception appears to have been taken. On this motion being denied, the parties assented that a verdict should pass for the plaintiff, the amount to be adjusted by the court. The court below, as appears from their opinion with which we have been furnished, thought the plaintiffs might have brought trover. I cannot bring myself to doubt that they might. Here was a package of goods coming to the defendant’s hands directed to" the plaintiffs, designated by a separate letter as intended for them, the plaintiffs themselves having presumptively assented, as they did soon afterwards in express terms. If trover would have lain, it follows that an action for money had and received will lie for the price obtained on the sale, or for the value as goods sold and delivered, at the election *584 of the plaintifis.(a) So far as the defendant was concerned, his silence was an assent to assume the trust, and an undertaking to execute it. Was there ever a doubt entertained in any case that where money is handed to B. for the use of C., the latter may have an action for it, especially where he consents to the trust 1 The same principle applies to the like delivery of goods in trust. The case of Atkin v. Harwick, (1 Str. 165,) is in point; and indeed goes much farther than it is necessary to go in this case. There, the debtors sent the goods to one Pen-hallow, to be delivered to the creditors. The delivery was held to vest the property of the goods in them immediately, subject to its being divested by their dissent. This was on the ground I have mentioned, that the trust was beneficial; and the presumption was allowed, although they in fact knew nothing of the transaction till after the debtors had become bankrupt and the rights of others had therefore arisen and claimed a preference. The express assent of the creditors after all this, was given in evidence, and, under the circumstances, even the intermediate claims of third persons were overruled, *585 It is not very important, for the purposes of the question before us, whether the reason given for the decision was sound or not. The case has never been overruled, though Lord Mansfield thought he had found a better reason; viz. the refusal by the debtors to accept the goods which had been sent to them by the creditors on sale. The conflicting case's have been cited by Mr. Justice Bronson, and are considered by Lawes On Stoppage in Transitu, 547 to 550. They are all cases of struggles for preference by persons claiming under the vendor prior to the express assent of the vendee; and the cases should be understood as speaking with a view to this when they say that Atkin v. Barwick cannot be-sustained to its full extent. Before the assent of the creditors had been given, the debtors had become bankrupt. The rights of the assignees had arisen. Had Pen-hallow stood on his own right, resisting the claim of his cestui que trust; had he sold the goods and then set the creditors at defiance, claiming title himself to the spoils of the fraud, he would have been nearer the case of the defendant below.
The rights of third persons not intervening, it seems to me that all difficulty is removed. What was it to the defendant below whether the plaintiffs gave their assent to the trust before or after the goods were sold? A man receives money from A. with direction to pay it over to B.; is it possible that his converting the money to his own use before B. demands it shall defeat the claim of the latter ? So of goods. It seems to me a plain answer to such a defence, that B. has finally agreed to the trust by demanding the money or goods, or by bringing an action ; either of which would be an adoption of the transaction. This adoption operates by relation to the time when the trustee received the goods, if not to the time when they were sent. All parties agree, the trustee inclusive, who could have no title except as trustee. The right of the debtor to countermand the proposition of transfer is gone. I shall not cite many cases to show that the subsequent adoption of an assumed authority or trust is the same in effect as an original assent to it. The proposition is too familiar. Such adoption always operates by relation and overreaches all claims of the original parties which *586 are contrary to the right and justice of the case. It has never been disallowed; and in furtherance of right and justice, it was allowed in Atkin v. Barwick to operate even as against the rights of third persons. Surely it was never questioned any where, independently of such rights. Where, says Chancellor Kent, a trust is created for the benefit of a third person, though without his knowledge at the time, he may affirm the trust and enforce its execution. (Cumberland v. Codrington, 3 John. Ch. Rep. 261.) And he cites Cases that where the trust regards personal property it may be enforced at law. (See also Shepherd v. M’Evers, 4 id. 138, d.) This doctrine is illustrated every day in thé case of trusts created by assignments for the benefit of creditor's, to which the trust in question is analogous. No one ever doubted that on the creditor’s assent at any time, he takes footing with ail the other creditors from the date of the assignment. Thé length to which this doctrine of relation is o . carried appears in Church v. Gilman, (15 Wend. Rep. 656, 660.) The delivery of a deed tó a stranger, declared to be for the use of the grantee, even without his knowledge, was there held to be a delivery to the grantee; and iii an other casé, though he did not receive the deed nor even know of its existence till after the death of the grantor, his assent was held to relate back to the life of the grantor, and the acceptance to be valid from the day of delivery. (Belden v. Carter, 4 Day, 66; Wheelwright v. Wheelwright, 2 Mass. Rep. 447, S. P., and other cases cited 15 Wend. 662, 3.)
The objection that the defendant below would, by oür sustaihing this judgment, be compelled to disgorge in the wrong directidn, Í have álready spoken of as destitute of foundation. As this objection seems to raise the only difficulty which can be considered serious, its want of validity should not be taken for granted. Can Mrs. Clifton maintain an action ? She sent the goods proposing that they should be taken by the plaintiffs below as purchasers. This was on a valuable consideration; (1 Stra. 166, 7;) and the proposition was never revoked. Indeed it was irrevocable. (Id.) It stood open till accepted by the vendees. That an acceptance constituted a perfect sale as between Mrs. Clifton and them, was *587 held in Mactier v. Frith, (6 Wend. 103.) The principle established by that case is, that a proposition to sell is presumed to continue unless revoked; and an acceptance, even without notice to the vendor, consummates the sale. The case is one of divers acts, constituting together a complete transfer. Mrs. Clifton being thus entirely cut off, so that no action can lie at her suit, it follows that, if the present action fails, all remedy is gone, and the defendant pockets the fruit of the wrong he committed with impunity. This should not be; and the case as now stated renders the general doctrine of relation more obvious. That is laid down in Vin. Abr. tit, Relation (E) 8, and was recognized and acted upon by this court in Jackson, ex dem, De Forest, v. Ramsay, (3 Cowen, 75, 80.) It is this: “ Where there are diyers acts concurrent to make a conveyance, estate or other thing, the original act shall be preferred.” At the same letter in Viner, pl. 5, and 6, it is said, “ in privity of right the law shall have relation to the first act.” Again, “ Execution of all things executory respect the original act, and shall have relation thereto, and shall .make but one act, though done at several times.” This is no more than the rule laid down by Lord Mansfield in Alderson v. Temple, (4 Burr. 2239.) He there says, “a contract shall be presumed complete upon any distinction where the justice of the case requires it, though there is no actual delivery.” He instances the case of consigning goods in payment of a consideration before advanced, which shall even oust the assignees: and to this extent he recognizes Atkin v. Barwick. Goods sent to pay a debt are in consideration of a previ,ous advancement within the meaning of the rule. They pass from the time of being loaded and started; and this is the case of which Lord Mansfield is speaking. It is in fact the doctrine of relation even as against the intervening rights of third persons.
. But take it that the contract hqd effect only from the time when the assent .of the plaintiffs below was communicated to the defendant; though this was after he had wrongfully sold the goods and got the money. The goods still existed in specie, and as between the parties the property passed. I do not say as against the defendant’s vendee; but as against the defendant *588 himself. From that time he clearly became liable for their value in this action. At least all right to the money in his hands, the substitute and representative of the goods, passed. Surely, under circumstances like those before us, the law will give effect to the contract as far as possible. This seems to me the last case in which we should disregard the rule valeat quantum valere potest. I am for affirming the judgment.
Nelson, C. J. concurred.
Judgment affirmed.

 For the American cases on. the subject of waiving tort and bringing assumpsit, see 1 Hill, 240, and note (a); 3 id. 282, 3, and note (a); 1 Metcalf & Perk. Dig. 274, 297, 8. The leading English cases will be found collected in 1 Stephen’s Nisi Prius, 285, 6, 346, Am. ed. of 1844; Chitty On Contr. 18, 19, 477, Springf. ed. of 1839; 1 Leigh’s Nisi Prius, 4, 5, 90, 1, Am. ed. of 1838; 2 Phill. Ev. 110, 111, 7th Land. ed.
The observations of the judges in Young v. Marshall, (8 Bing. 43,) are worthy of attention as illustrating the principle on which the English doctrine rests. The action was for money had and received, and was brought by the assignee of a bankrupt, against the sheriff, on the ground that he had wrongfully sold goods be. longing to the plaintiff on a fi.fa.; and it was objected that the action should have been trover, especially as the money had been paid over to the execution creditor before suit commenced. The court however overruled the objection, holding that the plaintiff might but was not bound to go for the tort. Tindal, Ch. J. there stated the rule to be, that “ no party is bound ta sue in tort, where, by converting the action. into an action of contract, he does not prejudice the defendant; and, generally speaking, it is more favorable to the defendant that he should be sued in contract, because that form of action lets in a set-off, and enables him to pay money into court.” Bosanquet, J. denied that the plaintiff who brings assumpsit, in such case, thereby affirms the acts of the sheriff; “ he merely waives his claim to damages for a wrong, and seeks to recover only the proceeds of the sale.”