BROWN (ARDEN v.). See Case No. 510.

BROWN (ARMSTRONG v.). See Case No. 542.

## Case No. 1,991.

### BROWN v. BARRETT.

[Cited in Bentley v. Phelps, Case No. 1,332. Nowhere reported; opinion not now accessible.]

BROWN (BLANCHARD v.). See Case No. 1,507.

BROWN (BOWNE v.). See Case No. 1,743.

BROWN (BOYD v.). See Case No. 1,747.

## Case No. 1,992.

### BROWN v. The BRADISH JOHNSON.

[1 Woods, 301.][1]

Circuit Court, D. Louisiana. Nov. Term, 1873.

SEAMEN—INJURY IN SERVICE OF SHIP—WAGES.

[Injury in the "service of the ship" in this connection includes hurts received in executing improper orders, wrongful punishment by an officer (Ringgold v. Crocker, supra), or a wound accidentally self-inflicted while engaged in quelling a disturbance on board (Callon v. Williams, Case No. 2,324).]

BROWN (BRIDGE v.). See Cases Nos. 1,857 and 1,858.

BROWN v. BRIDGES. See Case No. 1,862.

BROWN (BROOK v.). See Case No. 1,931.

## Case No. 1,993.

### BROWN v. BROWN.

[Cited in Peck v. Pease, Case No. 10,894. Nowhere reported; opinion not now accessible.]

## Case No. 1,994.

### BROWN v. BROWN et al.

[1 Woodb. & M. 325.][1]

Circuit Court, D. Rhode Island. June Term, 1846.

DEED—CONVEYANCE TO GRANTOR'S SON—DELIVERY TO THIRD PERSON—FAILURE TO RECORD—EFFECT.

1. Where a father conveyed land to his son for services and affection, and took back a lease for life, but did not wish to have them recorded till after his death, in order to keep the knowledge of them from his wife and the public, the deed was held to be well delivered, though

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

lodged with a third person under the above arrangement.

[Cited in Bentley v. Phelps, Case No. 1,331.]

[See Carr v. Hoxie, Case No. 2,438.]

2. If that third person falls sick, and the grantor takes back the deed for safety, and dies leaving it among his papers, from which it is taken by the grantee and recorded, the original delivery still continues to be valid.

3. More confidence and looseness in such matters are tolerated between a father and a son, and such conveyances are at times considered in chancery, in the nature of a settlement of the father's estate to this extent.

4. If the complainant put in confessions of the respondent, who was the grantee, as to the arrangement about the deposit and delivery of the deed, they may be used by either side.

In equity. This was a bill alleging that the complainant [Emily Brown] was daughter of Gideon Brown, late of Johnston, in Rhode Island, and that the respondents [Cyrus Brown and another] were other children of his by a former wife; that she is now resident in Massachusetts, and they, on the homestead farm of which said Gideon died seised in said Johnston; that Gideon, on the 14th of May, 1833, conveyed certain lands worth $3,000, to Arnold Brown, one of the defendants, for love and affection; and to said Cyrus, on the 15th of May, still different lands, of the value of $3,000; and that Amey Arnold, a daughter of Gideon, and Rhoda Warner, another daughter, constitute with the complainant and Arnold and Cyrus, the five heirs of Gideon, and deducting the advancements aforesaid made to the sons, that the homestead farm ought to be partitioned equally between them; that the respondents have refused such partition, when demanded by her through her guardian; and, pretending she is not seised thereof with them, have combined to defraud her; and therefore she prays that a commission be appointed to make partition between them, and for such other relief as may be proper in the premises.

The answer of Cyrus Brown admits the seisin of the homestead farm by Gideon at his death, to the extent of one hundred and eighty-five acres, including about eighty-seven acres, which had been set off as dower to his widow; but avers, that on the 15th of May, 1833, Gideon conveyed to Cyrus one hundred acres off the southerly side of said farm, and gave the custody of the deed (after its execution and delivery to Cyrus,) to one Benj. Whipple, to be held for the use of Cyrus till requested, and that Cyrus executed a life-lease of the same back to Gideon, and delivered it to him. And afterwards, in the advanced age of said B. Whipple, Gideon took the deed from him for safety, and for the use of Cyrus, until the death of Gideon, when it came into the possession of Cyrus. And so this respondent avers, that the complainant and the other persons named are not jointly seised of the one hundred acres, but they are his own separate estate.

An amended answer of Cyrus averred, that the deed from Gideon to him was, after its execution, carried by him to the house of B. Kimbal, in order to have the life-lease written from it by Kimbal, and when executed, it was left with him for Gideon, and the deed returned to Gideon and left by him with Whipple as aforesaid, for the respondent. No other answers are in the case, or any pleadings in respect to the residue of the farm. [Decree for respondents.]

Mr. Eaton and A. Greene, for complainant.
Ames and Carpenter, for respondent.

WOODBURY, Circuit Justice. I take it for granted, that there is no controversy concerning the premises, of which partition is asked, except as to the one hundred acres conveyed to Cyrus Brown, in May, 1833, and that no objection is made to the prayer of the complainant, except by Cyrus Brown. The sole question then is, whether that deed was a valid one; or, in other words, whether it was ever duly delivered by the grantor. On that point the evidence is in some respects conflicting, but the balance of the testimony is to this effect. The general impression left by all the evidence in the case on this point is, that Gideon, the father, intended to convey the one hundred acres so as to vest the title in Cyrus, but was unwilling to quit the premises during his life, or have it appear to the community that he had divested himself of his own homestead, or to let his new wife know that he had disposed of so large a portion of his estate before their marriage.

The facts bearing on this, and which are not in controversy, are, that the father, Gideon, was about to marry a second wife, when somewhat advanced in life; that he proposed to settle some of his estate on his sons first, and accordingly executed the three deeds above named in May, 1833, having made some other small conveyances before; that Cyrus had worked with him and aided him in business more than the rest, though the complainant contended and offered evidence on her part, to show it had not been so beneficially as to entitle him to so liberal a share as the one hundred acres in the homestead farm; that the father had often expressed himself under great obligations to Cyrus for his assistance, and said that he should have the homestead at his death. Accordingly it is beyond controversy, that the father executed the deed in question to Cyrus, in May, 1833, and that Cyrus executed back to him a life-lease of the premises, and took the deed into his possession and carried it to a draughtsman to write the lease by it. Had the possession of it been for any other than a specific purpose, it would be natural to infer a delivery of the deed then generally, to Cyrus, in order to perfect the grant. But it being for a particular purpose, consistent with no delivery for general objects, I think the validity of

the deed as to a delivery, must be inferred from other facts, if at all.

The execution of the life-lease back would also be evidence that the deed had been perfected, if the lease had been delivered to the lessee. For, in that event, a previous delivery of the deed must occur, in order to have any interest for the life-lease to operate on. But that lease was likewise left in the hands of a third person, as well as the deed to Cyrus; and it cannot be regarded as delivered, unless the intention of the grantor is apparent to that effect from other circumstances. If it be so apparent, no manual delivery is necessary, as words without acts, or acts without words, may show the intent. Thoroughgood's Case, 9 Coke, 136b; Souverbye v. Arden, 1 Johns. Ch. 240, 258; 12 Johns. 552; Mills v. Gore, 20 Pick. 28, 29; Shep. Tcuch. 57. Thus, intentions and corresponding acts may constitute a delivery, without handing the deed to the grantee or leaving it in his possession, if the grantor completed the execution of the instrument, and merely disposed of it in such a way that it should not be recorded or made public, during his life. The deed may be as perfect to convey the title, without as with recording, the latter being merely notice to third persons, and not affecting the interests of the parties to the instrument. West v. Randall [Case No. 17,424].

It is to be remembered, also, that much more indulgence and confidence would exist between a father and son on such a subject, than between strangers. The caprices, or whims, or wishes of any kind, of the parent, would be gratified so far as practicable, without defeating their leading intentions and interests. Here, then, after perfecting the conveyances as to this one hundred acres—the deed and life-lease—it was natural for the father, being on the eve of another marriage, as well as being a man of substance among his townsmen, to desire to retain the appearance of property, and, if practicable, not to seem stripped of much of his real estate. How was this then, to be effected, and still secure the land to Cyrus, the leading object in the conveyance? Not by recording both the deed and lease; for though that would secure the latter object, it would defeat the former one. The only mode, then, to accomplish both objects, was to have neither instrument recorded in the lifetime of Gideon Brown. How was that to be safely effected and still pass the title? If each was left in the hands of the person entitled to each, one or the other or both might get them recorded, if some difficulty should happen between the parties, or might do it by mistake, or forgetfulness of the arrangement, and hence it seemed safest to lodge both in the hands of third persons, not to be recorded till Gideon's death. If the design had been, that the deed was not to be considered as delivered till Gideon's death, there would have been no occasion for the lease at all, as there would and could be nothing for it to operate on. But both parties took pains to have the lease prepared; and neither could have desired it, unless the title to the land, as between the parties, was understood by them, and intended to have been actually conveyed and passed to the lessor beforehand.

This view of the matter, too, does not conflict with any established precedents. The cases that may appear to operate against it are cases where no delivery of the deed was intended at the time, but it was to be dependent on some future event, or payment, or act done. Foster v. Mansfield, 3 Metc. [Mass.] 412; Russell v. Rowland, 6 Wend. 666; Wheelwright v. Wheelwright, 2 Mass. 447. Here was no such contingency, and a delivery to A. for B. is good. 2 Dyer, 167; 2 Leon. 110; Garnons v. Knight, 5 Barn. & C. 671; 12 Com. L. R. [E. C. L.] 351; Souverbye v. Arden, 1 Johns. Ch. 240. In this case, as in that, if the question were doubtful, whether this deed was originally delivered, on the hypothesis that it might have been merely lodged with a third person so as not to be recorded till the death of the grantor, it would not be difficult to sustain it on the other ground just stated, that it was delivered to Whipple for Cyrus, and to be kept for him till the death of the grantor. 2 Mass. 447; 3 Metc. [Mass.] 414; Belden v. Carter, 4 Day, 66; Bickford v. Daniels, 2 N. H. 71; 1 Id. 357; [Pawling v. U. S.] 4 Cranch [8 U. S.] 219. See the cases just cited. And the grantor's taking it back, when Whipple fell sick, was by consent of Cyrus, and merely for safe keeping. Again, this view of the subject carries out the manifest design of the father to invest Cyrus with this part of the homestead as his own, after the death of the father. Any other view would defeat the paramount design; one which, looking to the lease as well as the deed, and to the frequent statements of the father, is too clear to be misunderstood. In fact, the whole transaction may also be considered a species of settlement of Gideon Brown's estate. And in equity, such a settlement is a sort of bequest by the father, which we ought to sustain, if it has never been revoked. 4 Day, 66; Eq. Dig. 408; 1 Hil. Abr. 301. Taking back the deed from Whipple, when he became infirm and unable longer to take care of it, and only for that reason, is no evidence of such a revocation; and the mutual confidence between father and son in not at once depositing it elsewhere, should hardly, in a court of conscience, be treated as the result of alienation rather than confidence, and as a change of views, when nothing appears to have existed to change their kindly relations and feelings. As a voluntary settlement, if the deed is retained, it should bind. 1 Johns. Ch. 240; Jones v. Jones, 6 Conn. 111.

Again, although there is some contradiction in the testimony as to the value of the

other property conveyed to Cyrus, and of his extra labor and services performed for the father, I am strongly inclined to the conclusion, that the premises in this deed would but little more than indemnify Cyrus, as an equitable creditor, and that to sustain the deed would not go much beyond paying him the principal honestly due, with the interest thereon from the time the services were performed. These matters between a father and a son should not be weighed in very nice scales; and where the father, as here, was rich, and the son industrious, and useful, and faithful to his interests, a liberal reward is to be encouraged rather than defeated. The expression by Gideon was, at the time the deeds were made, "He wanted his son Cyrus to have the deeds to pay him for his labor." Hesitancy about a mere technical delivery, after a party has signed and sealed a deed and for good cause, it is hardly equitable to indulge in, beyond what is absolutely necessary on legal principles, and it is not to be encouraged. 19 Ves. 296. If a bond and mortgage are executed for a debt due, though not known to the obligee, they are good, though retained by the mortgagor. Exton v. Scott, 6 Sim. 31; Buffum v. Green, 5 N. H. 71. So a deed, prepared and acknowledged, will take effect, though found in grantor's desk, if circumstances indicate an intent to consider it delivered. Scrugham v. Wood, 15 Wend. 545; Prec. Ch. 211, 235; 1 Brown, Parl. Cas. 122; Shelton's Case, Cro. Eliz. 7; Garnons v. Knight, 8 Dowl. & R. 348; 4 Kent, Comm. 455; 1 Johns. Ch. 240; Jaques v. Methodist Episcopal Church, 17 Johns. 548, 577; Buffum v. Green, 5 N. H. 71. The assent of the mind of the grantor, that the grantee have the deed, is the great inquiry, and evidence of that, if existing, controls the question of delivery. Jones v. Jones, 6 Conn. 111; 1 Dev. Eq. 15. So the subsequent possession of this deed by the grantor raises a presumption of delivery to him till the contrary is well proved. Flagg v. Mann [Case No. 4,847]. A deed once executed and delivered does not become invalid by being afterwards in possession of the grantor, unless surrendered as or to be cancelled. 1 Johns. Ch. 240; 6 Sim. 31; 2 H. Bl. 264; 2 Lev. 113; 4 Conn. 550; 5 Conn. 262; 6 Mass. 24; 2 Johns. 84. Then it prevents success under the deed, as it prevents evidence of title under it, but it does not technically reconvey the title, to cancel the deed. Farrar v. Farrar, 4 N. H. 191, and cases there cited; Tomson v. Ward, 1 N. H. 9. Nor is there any difficulty here, as in some cases, about the time the delivery must be regarded as taking effect. For both the deed and the lease took effect at the time when they were executed, and both will thus operate consistently and in accordance with the conduct and confessions of the parties made afterwards. See statements to James Olney, that Gideon said "the land was to be Cyrus', after his death." So to Christopher Wilkinson, that Cyrus was to have the homestead. Such statements in conformity with the deed are competent evidence. 1 Greenl. Ev. 220; 1 Johns. Ch. 243. See, further, 2 Mason, 207 [West v. Randall, Case No. 17,-424]; 9 Mass. 310; Foster's Case, 3 Metc. [Mass.] 412; 13 Johns. 285; 2 Mass. 453.

It has not been overlooked in examining the evidence, that some of it for the respondent comes from connections; and, standing alone, would not be entitled to so much credit. And that other parts relate to some surprise expressed by Cyrus at the finding of the deed, and his looking for a will, which are not thought to be consistent entirely with my views of the case. But where the relations testify to what is material, they do not stand wholly alone; and the surprise of Cyrus may have been rather to find the deed there, than elsewhere; and the will may have been expected to refer to the residue of the estate of the father rather than to this one hundred acres. The complainant puts in confessions or statements of Cyrus, that the deed was not to be made known during his father's lifetime; and that Cyrus assented to his father's taking the deed from Whipple, who was old and sick. All this is competent evidence put in by the complainant 1 Greenl. Ev. 220–222. And being properly in the case, it may be used by either side in support of its views. It tends strongly to fortify the ground, that it was not an unwillingness to deliver the deed, or to have it considered as delivered, which led to the arrangements that were made, but merely an unwillingness to have it recorded, and publicity given to the transaction in any way before Gideon's death. It shows, also, that the deed being afterwards in possession of Gideon, was, by consent of Cyrus, and for its safe keeping, and not because it had been relinquished by him, or the title reclaimed or wished to be reclaimed by Gideon. Indeed, after once duly delivered, if a deed gets again into the possession of the grantor, it does not affect the title, unless as before shown, it is expressly placed there to be cancelled, and with a view to vacate the conveyance. 1 Johns. Ch. 240; Prec. Ch. 211; 1 N. H. 9, and other cases before cited. Considering all these circumstances and principles, I think the plaintiff is not entitled to any share or partition in these one hundred acres.