<em>Hartford,</em><br>November,<br>1815.<br><br>Shepard<br><em>v.</em><br>Hawley.

---

## WOLCOTT *against* COLEMAN.

THIS was a petition for a new trial on the ground of mispleading. On the trial of the original action, (reported on a motion for a new trial *ante* 285.) the present petitioner, then defendant, pleaded *not guilty*, and a verdict was given against him. He now states, that he missed his plea ; as he had a good ground of defence, which, if pleaded, would have saved him from the demand of the plaintiff in that action.

After ver-<br>dict and<br>judgment<br>for the<br>plaintiff, on<br>the issue of<br><em>not guilty,</em><br>in an action<br>by <em>C.</em> one of<br>two cove-<br>nantees,<br>against <em>W.</em>

the covenantor, for fraudulently taking and pleading a discharge from *T.* the other covenantee, the defendant brought a petition for a new trial on the ground of *mispleading* when he had a good defence, consisting of a general deed of release from *C.* to *T.*, who was a joint tort-feasor with *W.* It appeared, that *C.*, wishing to obtain the deposition of *T.* to be used in said suit against *W.* then about to be commenced, agreed with *T.* to give him a release of all demands to take effect after the final determination of said suit; and accordingly wrote, signed and sealed such release, and left it upon the table with other papers ; that *T.* wrote his deposition, and then took up and carried away the release ; and that about two months afterwards, *T.* made oath to his deposition, and lodged the release in the hands of *B.*, there to remain until the final determination of said suit, and then to be delivered by *B.* to *T.* Held that such release was an *escrow*, lodged in the hands of *B.* to hold until the final determination of said suit, and then to deliver it to *T.*, from which delivery alone it would take effect ; and, of course, *W.* could never avail himself of it by way of defence to said suit.

*Taylor* was equally liable with *Wolcott* to *Coleman* for such demand, being equally concerned with him in the transaction. *Coleman* knowing this applied to *Taylor*, on the 11th of *September* 1812, and claimed from him the whole amount of damages sustained in consequence of his giving and *Wolcott's* receiving the discharge mentioned in the declaration; which *Taylor* accordingly paid; and *Coleman*, in consideration thereof, executed and delivered to *Taylor* a general release and discharge.

The respondent in his answer denied the truth of the facts stated in the petition. The parties then proceeded to a hearing before the superior court; but the evidence being all in writing, it was agreed that the case should be reserved with the exhibits for the advice of the nine Judges.

There were two depositions of *Taylor*. The first was as follows: " On the 19th of *November* 1814, I called on *Isaac C. Bates*, Esq. of *Northampton*, and informed him, that I had understood from good authority that the motion for a new trial in the case of *William Coleman* against *Alexander Wolcott* had been decided against *Wolcott*, and that according to the terms of agreement between *Coleman* and myself, a release of all demands from *Coleman* to me, dated *September* 11th, 1812, and which was left by me in the hands of *Bates* as an escrow to abide the event of the trial between *Coleman* and *Wolcott*, ought then to be delivered to me. *Bates* replied to me, that he had been instructed by *Coleman* not to let that release go out of his hands without consulting him; and that he could not comply until he had consulted *Coleman*, which he engaged to do immediately; and if *Coleman* had no objections, he would hand the discharge to me. He has not since handed it to me, or said any thing to me on the subject. It is in the hand-writing of *Coleman*, and under seal. Its contents are better described, as well as the terms upon which it was to rest in *Bates's* hands, by the receipt which he gave me at the time it was left in his hands, than I could otherwise do from memory; and for that purpose I annex it to this deposition. It was left with *Bates*, at the request of *Coleman*, sometime after it was executed and delivered to me, to prevent its operation in bar of *Coleman's* action against *Wolcott*." *Bates's* receipt. " Received of *John Taylor*, a discharge from *Coleman* to him of all actions, causes of action, or demands whatsoever, either in law or

equity, dated *September* 11th, 1812 ; which discharge I am by agreement to retain in my hands until the termination of said *Coleman's* suit against *Alexander Wolcott* in contemplation at the time said discharge was signed, and now actually commenced, as an escrow, to have no operation whatsoever ; and at the termination of said suit, I am to deliver the same discharge to said *Taylor,* whatever may be the event thereof, to have from that time full force, operation and effect. *November* 23rd, 1812. *Isaac C. Bates.*"

*Taylor's* second deposition relates to the same transaction. It begins the history farther back, and contains some particulars omitted in the other. The following is extracted. " In the month of *September* 1812, *Coleman* applied to me for a deposition in his suit against *Wolcott.* I objected to it, and offered *Coleman,* if he would not press me to give a deposition, that I would neither give one to *Wolcott,* nor appear to testify in court. But I yielded to his importunity, upon a promise on his part to give me a discharge in full of all claims either in law or equity. Such a discharge was written by *Coleman,* and either handed to me by him, or laid on the table, to be taken as soon as the deposition which then only wanted being sworn to, was completed. I went to dine, and was to meet *Coleman* at 3 o'clock at the same place. I went there, and tarried about half an hour, and then went away, *Coleman* not appearing as I expected. The discharge I had in my possession when I left the room where the deposition was prepared : and it continued in my possession until *November* 23rd, 1812. I never had any condition named to me of its being placed in the hands of a third person, or of having it lie as an escrow, until that time ; when I swore to the deposition."

*Bates's* deposition. " On the 11th of *September* 1812, *Coleman* was at *Northampton* for the purpose of procuring the depositions of sundry persons, and among others the deposition of *Taylor* to be used in his suit against *Wolcott.* *Coleman* and *Taylor* came to my office where they had a conversation in relation to that cause, and the facts to which it was supposed *Taylor* could testify, and the necessity of obtaining his deposition to disclose and prove them. *Taylor* expressed a reluctance at giving his deposition, or in any way meddling with said suit, and a wish to be freed as well from the present embarrassment as the consequences

of the transaction out of which that suit grew ; and remarked, either that *Wolcott* had given, or had engaged to give him, a discharge or release therefrom. *Coleman* observed, that whatever might be the event of that suit, he had no disposition to resort to him, *Taylor,* for any further remedy ; that his reliance was upon *Wolcott ;* and that he had no objection to give him, *Taylor,* a release, if he desired it, to take effect after the final determination of his suit against *Wolcott ;* and thereupon he wrote, and signed and sealed a release, which I attested, in the words and figures following, *viz.* ' Know all men by these presents, that I *William Coleman* of *New-York,* do hereby, for myself, my heirs, executors and administrators, remise, release and forever quit-claim unto *John Taylor* of *Northampton,* his heirs, executors, or administrators, all actions, causes of actions or demands whatsoever, either in law or equity, which against the said *John Taylor* I ever had, or now have, by reason of any act or cause from the beginning of the world to this day. In witness whereof, I have hereunto set my hand and seal this 11th of *September,* 1812.

Attest. *I. C. Bates.* *William Coleman.*' [L. S.]

This deed of release lay upon the table among other papers until the close of the conversation, when *Taylor* read it, and put it in his pocket. Some time afterwards, I called upon *Taylor,* in behalf of *Coleman,* and told him he ought not to retain that deed, nor to have taken it ; that I would see it delivered to him whenever the event happened upon which it was to take effect ; that as it was intended as an escrow, it was obviously proper it should remain in some other hands than his own ; to which he readily assented, and delivered me the deed. And to guard against uncertainty and accident, I proposed to give, and did give him a receipt or memorandum in writing, expressing, as nearly as I can recollect, the original intention of *Coleman* and *Taylor* in relation to said deed, and my engagement to carry that intention into effect. I then took the deed, and now retain it, to be delivered to *Taylor* whenever said suit shall be finally settled, and not before ; for which deed no consideration was paid or suggested at the time it was made, or at any other time, to my knowledge ; nor were any damages, on any account whatever, claimed or demanded by *Coleman* of *Taylor ;* but

said deed was, on the part of *Coleman*, a gratuitous act, done under the circumstances I have herein before detailed."

There were two other depositions proving that *Taylor* read *Bates's* deposition before it was sworn to ; and being asked whether it was correct, said it was, except one word, which *Bates*, not conceiving it to be material, immediately erased.

It appeared, that *Wolcott's* counsel advised him to try his cause on the plea of *not guilty*, though they were apprized of *Coleman's* deed of release to *Taylor*.

*Daggett* and *N. Smith* for the petitioner. If it appears that *Wolcott* had a good defence, which he failed to make use of, from having missed his plea, a new trial will be granted. The superior and county courts are expressly authorized by statute,(a) to grant new trials of causes that shall come before them, for *mispleading*. This is a provision of law essential to the due administration of justice where double pleading is not allowed.(b)

In support of the general proposition, that *Wolcott* had a good defence, they contended, 1. That a release to one of two trespassers or tort-feasors is a release of the trespass or tort, and shall enure to the benefit of both. If *Coleman* had received of *Taylor* all the damage which he claims to have sustained, he must clearly be barred of a recovery against *Wolcott*.

2. That a release *by deed* is conclusive evidence of a full satisfaction. 5 *Co.* 117. *b.* 118. *a.* *Co. Litt.* 212. *b.*

3. That this release operated from the delivery to *Taylor* on the 11th of *September* 1812. From that time until the 23d of *November* 1812, it was in *Taylor's* hands, and was unconditional. It took effect immediately ; and its operation could not be defeated as to *Wolcott* by any subsequent transaction between *Coleman* and *Taylor*.

4. That if the release had been delivered to *Bates* in the first instance, and had never been in *Taylor's* hands ; yet as it was to be delivered to *Taylor* on the happening of an event which certainly must take place, and *Bates* was a trustee of it for this purpose, it was the absolute deed of *Coleman*, and

*Hartford,*
November,
1815.

Wolcott
*v.*
Coleman.

(a) *Tit.* 6. *c.* 1. *s.* 13.

(b) Our statute allowing double pleading, was passed after the trial of this cause in the superior court.

will be considered after the event as taking effect, by relation, from the time of the first delivery. *Belden* v. *Carter,* 4 *Day's Ca.* 66.

5. That the tort complained of was the joint act of *Wolcott* and *Taylor.*

*R. M. Sherman* and *Staples* for the respondent, contended,

1. That where a party has chosen his defence, and gone to trial upon facts adapted to that defence, he is not entitled to a new trial, on the ground that he might have made out a different defence by other facts. A new trial for *mispleading* is to be granted only where the form of pleading is not adapted to the facts constituting the defence. It is no ground for a new trial that a party has missed his *defence.* *Vernon & al.* v. *Hankey & al.,* 2 *Term Rep.* 113, 120. 6 *Bac. Abr.* 671. (*Wils.* edit.)

2. That where the verdict is agreeable to the equity and justice of the case, the court will not grant a new trial to let the party into a *technical* defence. *Wilkinson* v. *Payne,* 4 *Term Rep.* 468, 470. *Edmondson* v. *Machell,* 2 *Term Rep.* 4. *Smith* v. *Page,* 2 *Salk.* 644. *Deerly* v. *Duchess of Mazarine,* 2 *Salk.* 646. *King* v. *Alberton,* 3 *Salk.* 361. *Gist* v. *Mason & al.,* 1 *Term Rep.* 84. *Cox* v. *Kitchin,* 1 *Bos. & Pull.* 338. *Berton* v. *Thompson,* 2 *Burr.* 664. The petitioner admits that he was guilty of the fraud alleged against him; that he has got *Coleman's* money, and refuses to pay it over. A new trial would only tend to defeat justice.

3. That the petitioner has not shewn a good defence. First, because the release was never *delivered* by *Coleman,* and therefore it is not his *deed. Shep. Touch.* 58. n. [1]. Secondly, because it was at most an *escrow,* which takes effect only from the second delivery. *Perk.* 60. *pl.* 137. *Shep. Touch.* 58, 59. 2 *Mass. Rep.* 452. The event on which the release was to be delivered over, has not taken place; this petition being a continuation of the suit. Thirdly, because admitting the deed to have been absolute, or to have become so, yet it does not discharge *Wolcott.* He and *Taylor* were not joint tort-feasors. The gist of the action against *Wolcott* is *pleading* the discharge. *Taylor* might have acted innocently. At any rate, it does not appear that he was guilty of any fraud, or that *Coleman* could sustain any action against him.

SWIFT, Ch. J.  The question in this case is, whether the discharge from *Coleman* to *Taylor* was *delivered*, or whether it was an *escrow*.  It appears from the evidence stated, that *Coleman* agreed with *Taylor* to give him a release of all demands to take effect after the final termination of his suit against *Wolcott*; and that *Taylor* agreed to give his deposition to be used in that suit.  *Coleman* executed the release, and laid it on the table.  *Taylor* completed his deposition, excepting making oath to the truth of it, and then took the release without delivery to him.  At a subsequent period, *Taylor*, according to the original agreement with *Coleman*, completed and made oath to his deposition, and then consented that the release should be lodged in the hands of *I. C. Bates*, Esq. there to remain till the final termination of the suit of *Coleman* against *Wolcott*, and then to be delivered by *Bates* to *Taylor*.  The legal effect of this transaction was, that the release was an escrow, to take effect on the happening of a certain event, and was lodged in the hands of *Bates* to hold till that event should happen, and then he was to deliver it to *Taylor*; from which delivery it was to take effect.  The event on which the release was to take effect and be delivered, was the termination of the suit of *Coleman* against *Wolcott*; but this very petition proves that this suit has not terminated, and is now pending.  If a new trial should be granted because *Coleman* had given this release to *Taylor*, it would not be competent for *Wolcott* to plead it in bar of the suit; for it was to have no operation, and was not to be delivered, till the termination of the suit.  The event then not having happened on which it was to take effect, the release continues to be an escrow in the hands of *Bates*, without any legal operation whatever; of course, *Wolcott* could not avail himself of it, if a new trial was to be granted.

In this opinion the other Judges severally concurred, except GODDARD and HOSMER, Js. who declined acting, having been concerned as counsel in the cause.

New trial not to be granted.