## WILLIAM F. GRILLEY *vs.* HOMER L. ATKINS.

Third Judicial District, Bridgeport, October Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Whether in a given case the delivery of a deed to a third person, to be delivered by him to the grantee after the grantor's death, is to be deemed a delivery *in presenti* or not, is generally a question of fact

depending upon the conduct and intention of the parties to the transaction. Two of the essential features of such a delivery are: first, the grantor must deliver the deed to the depositary for the ultimate benefit of the grantee, and in some way express his intention to that effect ; and second, the grantor must, at the time of such delivery to the depositary, part both with the possession of the deed and with all dominion and control over it.

A delivery so made and accepted by the grantee cannot be revoked or modified by the grantor alone, notwithstanding the deed was one without consideration.

The facts in the present case reviewed and *held* to show a delivery in compliance with the foregoing rules.

A delivery to the agent of the grantor, as such, would be of no force, since the grantor would not thereby part with the possession and control of the instrument.

Argued October 24th—decided December 15th, 1905.

SUIT by the grantee of a deed to secure the cancellation of a subsequent deed as a cloud on his title, or for other relief, brought to the District Court of Waterbury and thence by the defendant's appeal to the Superior Court in New Haven County and tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

*Edward F. Cole*, for the appellant (defendant).

*Charles G. Root*, for the appellee (plaintiff).

TORRANCE, C. J. The plaintiff and the defendant are half-brothers, sons of the same mother, Eunice A. Atkins. She died in September, 1899, aged 86 years. The dispute between the brothers relates to the ownership of land lying in the town of Waterbury and described in the first paragraph of the complaint. The plaintiff claims the land under a deed from his mother made in April, 1898, hereinafter for brevity called deed *A*, while the defendant claims it, or a portion of it, under a deed from her made in June, 1899, hereinafter called deed *B*.

The controlling facts in the case are in substance as fol-

lows: On April 14th, 1898, Mrs. Atkins accompanied by the plaintiff went to the office of Wilson H. Pierce, Esq., a practicing attorney in Waterbury, and Mrs. Atkins then requested him to draw a deed, to be executed by her, conveying to the plaintiff, subject to her life use, a certain piece of land situated in Waterbury, with a dwelling-house thereon, described in the first paragraph of the complaint. Pierce drew said deed and the same was then and there duly executed by Mrs. Atkins; and thereupon, at her request and by her direction, he placed said deed in an envelope and sealed it up. The deed in said envelope was then delivered to Pierce by Mrs. Atkins, with instruction to keep and hold the same as an escrow, and to deliver the same upon her death to the plaintiff; and, at the request of Mrs. Atkins, Pierce then and there wrote the following words upon said envelope: " I hereby place the within deed as an *escrow* in the hands of Wilson H. Pierce, my attorney, to deliver the said deed upon my death to my son, William F. Grilley, of Waterbury, or his heirs, to be recorded." Mrs. Atkins then placed her name and seal on said envelope under said words, as follows: " Eunice Atkins (L. S.)," and Pierce then wrote upon said envelope: " April 14, 1898. Deed in my hands as an *escrow*, to be delivered to William F. Grilley, of Waterbury, upon the death of Eunice A. Atkins. W. H. P." Pierce had never before this time, and never thereafter, acted as the attorney of Mrs. Atkins. All that Pierce did for Mrs. Atkins on this occasion was to draw the deed and take the acknowledgment, make the indorsement upon the envelope, and place the same in his safe. At the time of the delivery of said deed to Pierce there was no intent upon the part of Mrs. Atkins to keep control of said deed, and she never in fact kept or retained control of the same. The delivery to Pierce was made by Mrs. Atkins with the intention that it should be a delivery in escrow. Said deed was left with Pierce with the knowledge and consent of the plaintiff.

On or about February 20th, 1899, Mrs. Atkins went to Pierce's office and demanded of him said deed left by her

with him April 14th, 1898, but he refused to give it to her upon the ground that he had no legal right to do so without the consent of the grantee therein. On June 29th, 1899, Mrs. Atkins accompanied by the defendant went to an attorney in Waterbury, who drew up a deed which was duly executed by Mrs. Atkins and which purported to convey to the defendant certain lands, including the house and a portion of the lot described in paragraph one of the complaint. Neither of said deeds was given upon a valuable consideration.

Mrs. Atkins died at Wolcott early in the morning of September 29th, 1899. In the forenoon of said day the plaintiff and defendant were at the home of the defendant where Mrs. Atkins lay dead, and the defendant pretended to the plaintiff that he was going to Bristol, leaving the plaintiff to come to Waterbury to make some arrangements for the funeral. The plaintiff came to Waterbury, and, after making some arrangements for the funeral, went to the office of Pierce about 3 : 30 P. M. on said day, demanded and received from him the deed left in escrow, and took the same to the office of the town clerk of the town of Waterbury, where he left it to be recorded at 3 : 30 P. M., and the same was duly recorded. Instead of going to Bristol, the defendant on said day came to Waterbury and left at the town clerk's office for record said deed of June 29th, at 3 : 15 P. M. The defendant, before June 29th, 1899, knew of the existence of said deed left in escrow, and knew that it was to be delivered to the plaintiff upon the death of Mrs. Atkins. The plaintiff had no knowledge of the defendant's deed of June 29th until after said September 29th. When Pierce delivered said deed left in escrow to the plaintiff, he wrote on the envelope containing the deed, " received the within deed this 29th day of Sept. 1899, 3 : 30 P. M."

Upon these facts the trial court set aside deed B, and ordered the defendant to execute and deliver to the plaintiff a release deed of the land described in deed A ; and this appeal is based upon alleged errors made by the court in so doing.

Where a deed is placed in the hands of a depositary for conditional future delivery to the grantee, a distinction has by some courts been recognized between cases where the future delivery depends upon the performance of some condition, and those where it depends upon the death of the grantor. In the former case the deed does not become operative until rightfully delivered by the depositary to the grantee, while in the latter, upon delivery to the depositary it is deemed to be the grantor's deed presently, taking effect for many, if not for most purposes, from the time of its delivery to the depositary. The deed in either of these cases is usually called an " escrow," but perhaps more frequently and more properly that word is used to designate the deed in the former, rather than in the latter, case. In *Foster* v. *Mansfield*, 3 Met. (Mass.) 412, 414, Chief Justice Shaw states the distinction in this way : " Where the future delivery is made to depend upon the payment of money, or the performance of some other condition, it will be deemed an escrow. Where it is merely to await the lapse of time, or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently. Still it will not take effect as a deed, until the second delivery ; but when thus delivered, it will take effect, by relation, from the first delivery." This distinction, between a deed placed in the hands of a depositary to be " delivered " by him upon the performance of some condition, and a deed " delivered " to the depositary to be by him handed over to the grantee at the death of the grantor, is recognized quite generally throughout the United States ; 11 Amer. & Eng. Ency. of Law (2d Ed.) 342 ; 16 Cyc. 566, and cases there cited ; but the courts are not agreed either as to the complete effect to be given to the " delivery " to the depositary, or as to the time when the title passes to the grantee. Some courts seem to hold that for many purposes the deed becomes operative and title passes when the deed is delivered to the depositary ; others, that it does not become operative till the death of the grantor, and then by relation takes effect from the " delivery " to the depositary ; while still others seem to

hold that the " delivery " to the depositary conveys title immediately to the grantee, subject to the life interest of the grantor. *Foster* v. *Mansfield*, 3 Met. (Mass.) 412; *Hathaway* v. *Payne*, 34 N. Y. 92; *Haeg* v. *Haeg*, 53 Minn. 33; *Bury* v. *Young*, 98 Cal. 446; *Baker* v. *Baker*, 159 Ill. 394; *Brown* v. *Westerfield*, 47 Neb. 399; *Arnegaard* v. *Arnegaard*, 7 N. D. 475. To a certain extent such a distinction is recognized in our own reports. In *Belden* v. *Carter*, 4 Day, 66, the deeds were left with a third party with directions to keep them, and if the grantor never called for them, to deliver them after the grantor's death to the grantees, but if the grantor called for the deeds to deliver them to him. The grantor died without recalling the deeds. It was held that the delivery to the third person was a delivery of the grantor's deeds presently; that the depositary held them in trust for the grantees; that the title became consummate in the grantees upon the death of the grantor; and that the deeds took effect by relation from the time of the first delivery. The placing of the deeds with the depositary was held to be a delivery of the grantor's deed presently, although the grantor during his life retained full control of the deeds and could recall them at pleasure. The ruling upon this last point in the above case is opposed to the overwhelming weight of authority; see note to the case of *Munro* v. *Bowles*, 54 L. R. A. 865, 872 (187 Ill. 346), and cases there cited; and it would not probably be followed in this State to-day. *Porter* v. *Woodhouse*, 59 Conn. 568. In *Stewart* v. *Stewart*, 5 Conn. 317, James Stewart made a deed of land to his children, and delivered it to a third party to hold till the grantor's death and then to deliver it to the grantees. After his death the deed was duly delivered to the grantees. It was held, following *Belden* v. *Carter*, that the deed when placed in the depositary's hands was the grantor's deed presently, consummate upon his death, and " efficacious to the passing of the interest conveyed, from the delivery of the deed to the trustee or agent." The instrument was held not to be a devise, " but a deed, taking effect from the first and only delivery, and consummated by the death of the grantor."

In *Jones* v. *Jones*, 6 Conn. 111, 113, CHIEF JUSTICE HOSMER says, in effect, that the delivery of a deed to a third party to the use of the grantees, to be delivered to them after the death of the grantor, is by legal operation a delivery to the grantees themselves ; and although this was an *obiter dictum*, it is worthy of note " as the opinion of an eminent judge." WAITE, J., in *Woodward* v. *Camp*, 22 Conn. 457, 462. In the last-named case a married woman united with her husband in the execution of a deed of land, and gave it to her husband with directions to deliver it to the grantee at her death. It was held in effect that the delivery to the husband was a delivery *in presenti*, vesting the title in the grantee, to become effectual and consummated upon the death of the grantor.

On the other hand, in the cases cited below, the deeds and other instruments delivered to third parties for future conditional delivery were held to be escrows, having no operative force until the second delivery. *Wolcott* v. *Coleman*, 1 Conn. 375 ; *Huntington* v. *Smith*, 4 id. 235 ; *Coe* v. *Turner*, 5 id. 86 ; *Sparrow* v. *Smith*, ibid. 113 ; *Raymond* v. *Smith*, ibid. 555 ; *White* v. *Bailey*, 14 id. 271.

Whether, in a given case, the delivery of a deed to a third party, to be delivered by him to the grantee after the grantor's death, is to be deemed a delivery *in presenti* or not, is generally a question of fact depending upon the conduct and intention of the parties to such a transaction. Two of the essential features of such a delivery are these : (1) the grantor must deliver the deed to a third person for the benefit of the grantee ultimately, and in some way express his intention to that effect; and (2) by the very great weight of authority the grantor must, at the time of such delivery to the third person, part both with the possession of the deed and with all dominion and control over it. See the cases cited to this effect in the note to the case of *Munro* v. *Bowles*, 54 L. R. A. 865, 871, 872 (187 Ill. 346) ; *Porter* v. *Woodhouse*, 59 Conn. 568. A delivery so made and accepted by the grantee is irrevocable by the grantor, and cannot by him be recalled, or revoked or modified, without the consent

of the grantee.   *Arnegaard* v. *Arnegaard*, 7 N. D. 475; *Bury* v. *Young*, 98 Cal. 446 ; *Issitt* v. *Dewey*, 47 Neb. 196 ; *Everett* v. *Everett*, 48 N. Y. 218 ; 16 Cyc. 568, and cases there cited.

We think the facts found in the case at bar clearly show that the delivery of deed *A* to Mr. Pierce was in effect a present delivery of it, to be held by him for the benefit of the grantee and subject to the life use of the grantor, and at her death to be surrendered by him to such grantee.   As shown by her request to Pierce, the grantor fully intended to pass the fee of the property to the plaintiff at the date of the deed, subject only to her life use; and the transaction into which she then entered with Pierce and the plaintiff was well adapted to carry out her intent.   She intended to, and did, in delivering the deed to Pierce, part with the possession of the deed, and with all her dominion and control over it.

The defendant claims that the delivery to Pierce was of no effect because he was the agent and attorney of the grantor, and consequently that the deed in his hands was in her hands.   If the facts found supported the above claim, the claimed consequence would undoubtedly follow; but they do not; on the contrary they clearly show that in taking delivery of deed *A* Pierce was not the agent of the grantor in any respect.

The defendant further claims that as deed *A* was made without consideration, the delivery of it to Pierce could be revoked by the grantor at will; and in support of this claim he cites *Belden* v. *Carter*, 4 Day, 66, and *Hoig* v. *Adrian College*, 83 Ill. 267.   These cases do not support his claim. In *Belden* v. *Carter* the grantor expressly retained control of the deed during his life; and in the Illinois case cited, it was held, merely, that a deed of land intended as a gift may be withdrawn before delivery of it is complete.   In the case at bar the gift was accepted and complete before the grantor attempted to revoke the delivery of the deed, and then it was too late, as is held even in cases where the deed was made without consideration.   *Brown* v. *Austen*, 35

Barb. (N. Y.) 341 ; *Issitt* v. *Dewey*, 47 Neb. 196 ; *Brown* v. *Westerfield*, 47 id. 399.

Upon the facts found in this case we think that the de--livery to Pierce was irrevocable by the grantor, without the consent of the grantee ; that by such delivery the title to the fee of the land described in deed *A* immediately passed to the plaintiff, subject to the grantor's life use ; and that such title, as against the grantor, and as against the defendant, her subsequent grantee without consideration and with knowledge of the existence and delivery of deed *A*, is a good and valid superior title.

There is no error.

In this opinion the other judges concurred.