No. 46,972

WAYNE R. CAIN, CONSERVATOR OF THE ESTATE OF VIOLA CAIN, and VIOLA E. CAIN, *Appellees*, v. MARVIN MORRISON and MARVA L. MORRISON, *Appellants*.

(512 P. 2d 474)

Opinion filed July 14, 1973.

*James L. Pinkerton*, of Merkel & Pinkerton, Chartered, of Wichita, argued the cause and was on the brief for the appellants.

*Marvin C. Pendergraft*, of Render, Kamas & Kelley, of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FOTH, C.: At issue in this case is the effectiveness of two deeds, each dealing with the same land, executed by the appellee Viola E. Cain in favor of her grandniece, the appellant Marva L. Morrison.

The story begins in 1947 when Viola Cain's husband died. The newly widowed Viola needed someone to help her look after her property and affairs, and she settled on her niece, Zaida Mae Morrison, whom she was educating. She gave Zaida Mae land adjoining her residence in Sedgwick County so as to have her adviser close at hand. Zaida Mae and her husband, the appellant Marvin Morrison, built a house and moved in, and Zaida Mae assumed her role as confidante and business manager.

Beginning in 1960 Viola, who was then about 70 years old, embarked on a program of settling her affairs. This she did by a series of deeds executed and delivered to various of her relatives. These deeds were all promptly recorded, although Viola orally reserved the income from each of the properties for her life. Zaida Mae handled the entire transaction, to Viola's complete satisfaction.

In 1963 Viola inherited from her father a two-thirds interest in the land in question, an eighty-acre tract in Sedgwick County. In December, 1964, Viola was about to be hospitalized, and she expressed a desire that Zaida Mae's daughter Marva have her interest in the eighty. The result was the first deed in controversy, dated December 12, 1964, on its face conveying to Marva an undivided two-thirds interest in fee simple. This deed was prepared by Zaida Mae under instructions from Viola which are the key to this law suit, and which will be discussed later.

This deed, unlike the 1960 deeds to other recipients of Viola's largesse, was not recorded. Instead it was placed in a safety deposit box belonging to Zaida Mae and her husband Marvin. Zaida Mae used the box to store other papers which belonged to Viola, as well as her own. There the deed remained until it was introduced into evidence at the trial of this action in December, 1971.

In the meantime, in 1969, Zaida Mae died, and after her death Marvin took over her role as Aunt Viola's business manager. Viola at some point had acquired the outstanding one-third interest in the eighty, and in December, 1969, asked Marvin to prepare a deed "just like the other one" giving Marva the other one-third to go with the two-thirds covered by the 1964 deed. In response he prepared the second deed in controversy, dated December 16, 1969, conveying fee simple title to the entire eighty. This deed was also placed in the safety deposit box, alongside the 1964 deed and the other papers.

It is apparent from the record that shortly thereafter discord developed between Viola and Zaida Mae's family—Marvin in particular—precipitated in part by Marvin's plans to remarry. On March 30, 1970, Viola conveyed the same eighty to Wayne R. Cain, a nephew of her deceased husband, by a deed recorded the same day. On January 19, 1971, Cain was appointed Viola's conservator —presumably in a voluntary proceeding. On February 2, 1971, Cain the individual conveyed the same property to himself as Viola's conservator, and recorded the deed on February 4, 1971.

The record is silent as to the consideration or motives underlying these two conveyances, and they play no significant role in the law suit.

On February 5, 1971, Marvin extracted from the safe deposit box and recorded the 1969 deed, which conveyed the entire eighty to Marva. There promptly followed this suit in which Viola and her conservator sought cancellation of the deed to Marva and asked that title be quieted in Viola.

The petition alleged that the 1969 deed was executed by Viola on the strength of Marvin's representations:

". . . (a) that the deed would place the above described property in joint tenancy ownership with Viola E. Cain and Marva L. Morrison as owners thereof; (b) that the deed would be held by Marvin Morrison and not delivered to Marva L. Morrison until after the death of plaintiff Viola E. Cain, to obviate the necessity of a probate and expense thereof; and (c) that should plaintiff, Viola E. Cain, desire to transfer the property within her lifetime, the purported transfer to Marva L. Morrison would be of no effect and would never be filed by defendants."

The petition further alleged:

"7. That plaintiff's signature was obtained on the deed to Marva L. Morrison by false representation; and that it was not her intention that said deed be made, executed and delivered to said defendant; and that said delivery was wrongful."

Marvin and Marva denied all and set up affirmative defenses including the statute of limitations. Marva, claiming the property as a gift, counterclaimed to have title quieted in her.

On the issues thus framed—and apparently without any semblance of a pre-trial conference—the matter was tried to the court. At trial the 1964 deed, which had not been mentioned in any of the pleadings, was exhumed from its resting place in Marvin's safety deposit box and offered into evidence. It was admitted by stipulation, and the trial proceeded on the validity of both deeds.

At the conclusion of the trial the matter was taken under advisement and on April 6, 1972, the trial court filed a journal entry of judgment containing the following recitations:

"THEREUPON, the Court, after studying the exhibits, hearing the testimony of witnesses and arguments of counsel and considering all of the evidence, enters its findings of fact and conclusions of law and finds in favor of the plaintiffs herein. The Court specifically finds that the deeds executed by Viola Cain to Marva Morrison in the years 1964 and 1969 are void and held for naught regarding the following described property, to wit:

[Legal description of the eighty acres.]

"The Court further specically finds that there was no delivery of the 1964

and 1969 deeds; that there was no consideration in the attempted transfer of interest in the 1964 and 1969 deeds; and there was an attempt by a fiduciary to gain indirectly by an attempted transfer from the ward to the daughter of the fiduciaries without adequate outside counsel."

Title was accordingly quieted in Viola's conservator, and both Marvin and Marva have apealed. They attack both the finding of "no delivery" and the finding that the relationship of Zaida Mae and Marvin to Viola was such that independent advice was necessary to validate a gift to their daughter. Of course, if either finding is supported by the record the judgment must be affirmed.

Turning first to the question of delivery, we find that the type of third-party arrangement encountered here is no stranger to this court. The applicable principles have been stated and applied many times in our decisions, perhaps nowhere more cogently than in the oft-cited case of *Young v. McWilliams,* 75 Kan. 243, 245-6, 89 Pac. 12:

"The only remaining question is whether the evidence sustained the judgment. This depends upon whether it showed a sufficient delivery of the deed. Where one who has executed a deed retains it in his own possession, with the intention that it shall become operative upon his death, no conveyance is effected. He dies in the full ownership of the property and the title passes to his heirs or devisees. (*Stone v. French,* 37 Kan. 145, 14 Pac. 530, 1 Am. St. Rep. 237; 13 Cyc. 569, ¶ 4a.) But where he deposits it with a third person, to be turned over upon his death to the grantee, *this is a good delivery if he thereby surrenders all control over it, but not otherwise.* (13 Cyc. 569; 9 A. & E. Encycl. of L. 157; 2 A. & E. Encycl. of L. [Supp.] 394; *Grilley v. Atkins,* 78 Conn. 380, 62 Atl. 337, 4 L. R. A., n. s., 816, and note.) In such a case the title is deemed to vest at once in the grantee, only the enjoyment of the property being postponed, a condition which the grantor is competent to create and which arises whenever a purpose on his part to establish it is sufficiently manifested, whether by express instructions to the depositary or otherwise.

"The important inquiry here, therefore, is whether J. R. Young gave the deed to Bowlus, the custodian, intending thereby to part with the title to the property. *If he retained control of the deed the situation was substantially the same as though he had held it in his own possession.*" (Emphasis added.)

See, also, *Agrelius v. Mohesky,* 208 Kan. 790, 494 P. 2d 1095, Syl. ¶¶ 6, 7, 8; *Reed v. Keatley,* 187 Kan. 273, 356 P. 2d 1004; *Cole, Administrator v. Hoefflin,* 187 Kan. 66, 69, 354 P. 2d 362; *Hush v. Reeder,* 150 Kan. 567, 95 P. 2d 313; *Johnson v. Cooper,* 123 Kan. 487, 255 Pac. 1112; *Smith v. Dolman,* 120 Kan. 283, 243 Pac. 323.

From these and many other cases which could be cited we find that the pertinent inquiry is whether, when she entrusted physical possession of the deeds to Zaida Mae in 1964 and to Marvin in

1969, Viola *intended* to relinquish control of the deeds and *intended* to convey to Marva a present interest in the property. Implicit in the trial court's finding of "no delivery" is a finding that she had no such intent. On appeal our function goes no further than to search the record for evidence on which that finding might reasonably be based.

Viola, 81 years of age at the time of trial, testified as to her 1964 understanding with Zaida Mae:

"Q. . . . Did you ever ask Zaida Mae to prepare a document in regard to the Criebel Estate [the eighty acres] in Marva Morrison?

"A. I was ill at the time and so I asked her to, but I said I want the privilege of selling it.

"Q. . . . Do you remember when this was?

"A. No, I don't recall, because I was going to the hospital at the time.

"Q. Okay. And what did you want to do with that property?

"A. I wanted it left to Marva in case of my death. Otherwise, I was to have the privilege of selling it because that is the only piece of property I had left to sell.

"Q. . . . And did Zaida Mae make out a document for you?

"A. Yes, she did. And she said she made it out that way, that I had the privilege to sell it because that is all I had.

"Q. . . . And did Zaida Mae provide you a document that passed this property the way you wanted to?

"A. Well, that's the way I wanted it done and I suppose she did it, because she always did what I asked her to.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .
.  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. I see. Did you desire that Marva, after your death, should have the Criebel Estate?

"A. Yes, unless I had it sold.

"Q. I see. And was there anything particular about this property that you wanted to retain any interest in it?

"A. Well, it was just my old home, was all.

"Q. I see.

"A. But when it don't pay its taxes, it's time to sell it."

As to her understanding with Marvin in 1969, she said she told him to make out the deed "just like the other one;" that she still wanted Marva to have the property, "but I still maintained that I should have the right to sell it because it was the only property that I had that I could sell. That is the way Zaida Mae had it fixed and that is the way I wanted it."

In our view this testimony, while sharply disputed by Marvin, is alone sufficient—if believed—to uphold the trial court's findings. It indicates that Viola intended for Zaida Mae and Marvin to hold

the deeds subject to her recall, and that Marvin's recording of the deed was a breach of his agreement wih her.

This position is buttressed to some extent by the fact that, of all the deeds Viola made reserving an oral life estate, only these two were not promptly recorded. Marvin testified that it was his "understanding" that the deed he prepared should stay in his box until Viola's death; that she had entrusted it to him as her business manager; and that she never told him to record it. The only reason he could give for recording it was that "when she went into conservatorship, I figured she give up all her rights." On this record we cannot say that the finding of "no delivery" is without support.

Appellants argue on this point that the petition doesn't allege that the deeds weren't delivered, but instead allege that the "delivery was wrongful." In the absence of a pre-trial order more closely defining the issues we think this allegation, coupled with the petition's charge "that it was not her intention that said deed be  .  .  . delivered to" Marva is broad enough to encompass the issue of delivery.

Because of our conclusion on the delivery of the deeds we need not pass on the need for independent outside counsel. But cf., *Hotchkiss, Administrator v. Werth,* 207 Kan. 132, 483 P. 2d 1053; *In re Estate of Carlson,* 201 Kan. 635, 443 P. 2d 339; *Loucks v. McCormick,* 198 Kan. 351, 424 P. 2d 555.

Likewise, because the judgment is based on the delivery question rather than actual or constructive fraud, appellants' statute of limitations defense must fall. So long as the deeds were held by their custodians in accordance with the agreement found to exist no cause of action arose. It was only when Marvin breached his trust and recorded the deed—*i.e.,* attempted "delivery" to Marva—that Viola had any cause for complaint. When she did she promptly sued.

Finally, appellants suggest that Viola's testimony concerning her intent when executing the deeds and entrusting them to Zaida Mae and Marvin was inadmissible under the parol evidence rule. Of a similar contention, we said long ago:

".  .  . The primary question was whether there was a delivery of the instrument with the intention that it should transfer title to the land. Before it could operate as a transfer of title here must have been an intention of the grantor that it should become effective as a present conveyance. Such intention is to be derived from the testimony as to the acts and words of the grantor relating to the execution and delivery of the deed and may be shown

by parol. [Citing cases.]" *(Bruce v. Mathewson.,* 97 Kan. 466, 469-70, 155 Pac. 787.)

See, also, *Mundell v. Franse,* 143 Kan. 139, 53 P. 2d 811; and *Reed v. Keatley,* supra.

The judgment is affirmed.

APPROVED BY THE COURT.